Gary CASSADY, Plaintiff,

v.

The Hon. Waldo F. WHEELER,
Defendant.

No. 2–57700.

Supreme Court of Iowa.

Dec. 30, 1974.

John C. Wellman, Des Moines, for plaintiff.

Ray A. Fenton, County Atty. and Charles S. Crook, III, Asst. County Atty., for defendant.

Heard by MOORE, C. J., and MASON, REES, UHLENHOPP and McCORMICK, JJ.

McCORMICK, Justice.

The question in this certiorari action is the meaning of the legislature's definition of marijuana in Code § 204.101(16). The State charged plaintiff Gary Cassady with four counts of delivery and one count of possession of a controlled substance, marijuana, under Code §§ 204.401(1) and 204.-401(3). Before trial the State filed a motion in limine asking the trial court to prohibit Cassady and his counsel from mentioning or introducing evidence that other species of cannabis exist than the one called marijuana in the statute. The trial court

sustained the motion, and we granted Cassady's petition for certiorari challenging the legality of that order. We annul the writ.

I. Code chapter 204 is the Iowa enactment of the Uniform Controlled Substances Act. Code § 204.401 defines prohibited acts, which include delivery and possession of controlled substances listed in schedules in §§ 204.203–204.212. Marijuana is listed in schedule I, § 204.204(4)(j).

Marijuana is defined in § 204.101(16):

"Marijuana" means all parts of the plant Cannabis sativa L., whether growing or not, its seeds, the resin extracted from any part of the plant, and every compound, manufacture, salt, derivative, mixture, or preparation of the plant, its seeds or resin. It does not include the mature stalks of the plant, fiber produced from the stalks, oil or cake made from the seeds of the plant, any other compound, manufacture, salt derivative, mixture, or preparation of the mature stalks, except the resin extracted therefrom, fiber, oil, or cake, or the sterilized seed of the plant which is incapable of germination.

Plaintiff contends that the legislature, in defining marijuana as cannabis sativa L., proscribed only one of several species of cannabis. As a matter of plant classification, the word "cannabis" identifies the genus of the plant, the word "sativa" identifies the species, and the abbreviation "L." identifies Linnaeus, the man who applied the nomenclature. Bell, Plant Variation and Classification, at 12–17 (1967).

Plaintiff's theory is that the State has the burden to prove he delivered or possessed the named species of cannabis and cannot obtain his conviction unless it does so. He points out there is a difference of opinion in the scientific community as to whether there is more than one species of cannabis, that is, whether cannabis is monotypic (a single species) or polytypic (more than one species). It is undisputed that cannabis has been referred to by different names. The question is whether those names are differ-

ent names for the same species or in fact identify different species. See R. Schultes et al., Cannabis: An Example of Taxonomic Neglect, Botanical Museum Leaflets, Harvard University, Vol. 28, No. 9, at 337–367 (1974). Plaintiff contends the existence of a scientific viewpoint that cannabis is polytypic entitles him to present evidence to that effect to the jury, letting the jury resolve the scientific debate in determining whether the State has proved he delivered or possessed cannabis sativa.

He made an offer of proof in response to the State's motion in limine through the testimony of Robert W. Cruden, a professor of botany at the University of Iowa. Dr. Cruden testified his specialty is taxonomy, the science of plant identification. He said there are currently three recognized species of cannabis and at least two others which are not officially described. The three allegedly recognized species are cannabis sativa, cannabis indica, and cannabis ruderalis. He acknowledged that all cannabis contains the chemical tetrahydrocannabinol (THC), the mind-affecting ingredient in the plant. He admitted there is a difference of opinion in the scientific community regarding the existence of more than one species of marijuana but asserted his view is the correct one.

The outcome of this action cannot be determined by letting the jury decide which scientists they believe. Plaintiff's position that the jury should resolve the issue on the basis of evidence from scientists is fallacious. The meaning of a statute is a question of law, not of science. It is an issue for the court, not the jury. Interpretation of a statute is always a matter of law for the court. Snook v. Herrmann, 161 N.W.2d 185, 187 (Iowa 1968).

The question in this case is not what some scientists take the term cannabis sativa L. to signify but what the Iowa legislature intended it to signify when it enacted Code § 204.101(16) in 1971. See Acts 64 G.A., First Session, ch. 148, § 101(16).

II. We must therefore decide what the legislature intended in its definition of marijuana. Familiar principles of statutory interpretation are applicable. Many of them are collected in Iowa National Industrial Loan Company v. Iowa State Department of Revenue, 224 N.W.2d 437 (Iowa 1974), filed December 18, 1974, State v. Conley, 222 N.W.2d 501 (Iowa 1974), State v. Prybil, 211 N.W.2d 308 (Iowa 1973), and State v. Vietor, 208 N.W.2d 894 (Iowa 1973). They will not be repeated here. The polestar is legislative intent.

The origin of the definition of marijuana used in Code § 204.101(16) sheds light on that intent. The same definition appeared in the final draft of the Uniform Narcotic Drug Act adopted by the National Conference of Commissioners on Uniform State Laws in 1932. 9B Uniform Laws Annotated at 417 (1966). Congress repeated this definition when it enacted a marijuana tax statute in 1937. Act August 2, 1937, c. 553, § 1; 50 Stat. 551. The same definition was used when Congress adopted the Comprehensive Drug Abuse Prevention and Control Act of 1970. 21 U.S.C. § 802(15). It was also used in the Uniform Controlled Substances Act adopted by the Uniform Conference of Commissioners of State Laws in 1970. Handbook of the National Conference of Commissioners on Uniform State Laws at 226–227 (1970).

Iowa first used the definition when it amended the Iowa version of the Uniform Narcotic Drug Act in 1941. Acts 49 G.A. ch. 132, § 6; see § 204.1(10)(c), The Code, 1971. When the Uniform Controlled Substances Act was recommended to the states for adoption in 1970, the commissioners said:

"The Uniform Controlled Substances Act is designed to supplant the Uniform Narcotic Drug Act, adopted by the National Conference of Commissioners on Uniform State Laws in 1933, and the Model State Drug Abuse Control Act, relating to depressant, stimulant, and hallucinogenic drugs, promulgated in 1966. With the enactment of the new

Federal narcotic and dangerous drug law, the 'Comprehensive Drug Abuse Prevention and Control Act of 1970' (Public Law 91–513, short title 'Controlled Substances Act'), it is necessary that the States update and revise their narcotic, marihuana, and dangerous drug laws.

"This Uniform Act was drafted to achieve uniformity between the laws of the several States and those of the Federal government. It has been designed to complement the new Federal narcotic and dangerous drug legislation and provide an interlocking trellis of Federal and State law to enable government at all levels to control more effectively the drug abuse problem." Handbook of the National Conference of Commissioners on Uniform State Laws, supra, at 223.

The Iowa legislature appointed a Drug Abuse Study Committee which conducted an extensive study of the uniform act in 1970 and recommended adoption of a modified version. The committee findings are found in the Final Report of the Drug Abuse Study Committee to the Sixty-Fourth General Assembly of the State of Iowa (1971). The bill recommended by the committee included the definition of marijuana found in the prior Iowa statute, the uniform act, and the federal statute. This definition was adopted in the Uniform Controlled Substances Act enacted by the 1971 legislature. Acts 64 G.A., First Session, ch. 148, § 101. The explanation attached to the bill was, in part, as follows:

"This bill is based on and in most respects is very similar to the Uniform Controlled Substances Act recommended to the states in 1970 by the National Conference of Commissioners on Uniform State Laws. It is designed to replace Iowa's present Uniform Narcotic Drug Act and depressant, stimulant, counterfeit and hallucinogenic drug law, which appear as chapters 204 and 204A, respectively of the Code of Iowa (1971). These laws would in any case have to be extensively revised to conform to the recently enacted federal Comprehensive Drug Abuse Prevention and Control Act of 1970 (Public Law 91–513). This bill is designed to complement the new federal act, and thereby provide an interlocking framework of federal and state law which will permit more effective efforts to control the drug abuse problem."

It thus appears the purpose of the Iowa legislature in scheduling marijuana as a controlled substance and defining it was to conform Iowa law to the uniform act and federal legislation in a common effort to fight drug abuse. Iowa's legislative history demonstrates a pattern of statutory changes to keep the Iowa drug abuse statutes in harmony with model acts and federal statutes. In an analogous situation, we said:

"It is of course the intent of our own legislature that controls. But in seeking that intent we have no guide post except the inevitable assumption that the legislature intended just what Congress intended by the language employed." Stromberg Hatchery v. Iowa Emp. Sec. Comm., 239 Iowa 1047, 1050, 33 N.W.2d 498, 500 (1948).

Therefore the intent of Congress and other jurisdictions in utilizing the same definition of marijuana is relevant in this case.

We are guided by interpretations by courts in other jurisdictions of statutory language identical to that in Iowa statutes. Saxton v. State, 206 N.W.2d 85, 86 (Iowa 1973). Judicial interpretations in other jurisdictions of such language prior to our enactments are entitled to great weight, although neither conclusive nor compulsory. Even subsequent judicial interpretations of identical statutory language in other jurisdictions are entitled to unusual respect and deference and will usually be followed if sound, reasonable, and in harmony with justice and public policy. Hubbard v. State, 163 N.W.2d 904, 909 (Iowa 1969); 2A Sutherland Statutory Construction § 52.02 at 329–331 (Fourth Ed. 1973).

Prior to our 1971 statute, federal courts held the federal statutory definition of marijuana as cannabis sativa in various federal drug statutes was inclusive of all cannabis. The plant was believed to be a single species. Leary v. United States, 395 U.S. 6, 50, 89 S.Ct. 1532, 1555, 23 L.Ed.2d 57, 90 (1969); United States v. Adams, 293 F.Supp. 776, 779 (S.D.N.Y.1968) ("Whatever its actual or possible uses, there is botanically but a single species of the plant."). In United States v. Moore, 330 F.Supp. 684 (E.D.Pa. 1970), aff'd 446 F.2d 448 (3 Cir. 1971), cert. denied, 406 U.S. 909, 92 S.Ct. 1617, 31 L.Ed.2d 820 (1972), the court expressly held that Congress intended to include all varieties of marijuana or cannabis within the statutory definition. Reviewing legislative history, the court observed Congress believed different names for the plant were used in different regions of the world but that the term cannabis sativa signified all cannabis.

State decisions interpreting the same definition prior to 1971 are in accord. State v. Romero, 74 N.M. 642, 397 P.2d 26 (1964); State v. Hall, 41 Wash.2d 446, 249 P.2d 769 (1952).

Subsequent federal and state decisions have generally given the definition the same interpretation. United States v. Rothberg, 351 F.Supp. 1115 (E.D.N.Y.1972), aff'd 480 F.2d 534 (2 Cir. 1973); United States v. Gaines, 489 F.2d 690 (5 Cir. 1974); United States v. King, 485 F.2d 353 (10 Cir. 1973); Sizemore v. State, 308 N.E.2d 400 (Ind.App.1974); State v. Parker, 9 Wash. App. 970, 515 P.2d 1307 (1973); State v. Wind, 60 Wis.2d 267, 208 N.W.2d 357 (1973).

Plaintiff relies on one trial court decision, United States v. Collier, Crim. No. 43604–73, decided by the Superior Court of the District of Columbia on March 19, 1974, and an order sustaining a motion for directed verdict in United States v. One 1966 Chevrolet Sedan, No. 73–1340, a forfeiture proceeding in the United States District Court for the Southern District of Florida, entered January 16, 1974. The Collier decision supports his position, but it interprets the definition by reference to current views of certain scientists rather than the intent of Congress. We do not find it persuasive. The order in the Florida case discusses but does not decide the issue.

Our own analysis of federal legislative history leads us to the same conclusion as the federal courts regarding the intent of Congress in using the uniform act definition of marijuana. Hearing records, committee reports, and debate show Congress treated cannabis sativa as a synonym for marijuana or hemp and any other name by which the cannabis plant might be called in enacting the 1937 marijuana tax statute. See United States v. Rothberg, supra. The House floor sponsor described marijuana as "a dangerous narcotic drug that is found in the resin extracted from the tops, leaves, and seeds of the hemp plant." Congressional Record, Vol. 81, part 5, at 5689. This legislative history reveals that the major definitional emphasis was on excluding from the tax those portions of the cannabis plant which were harmless and had industrial use.

Congressional intent in 1970 in defining marijuana was the same as in 1937. The same definition was used in the 1970 statute. Evidence taken in committee hearings treated cannabis sativa as signifying any plant containing tetrahydrocannabinols (THC). Congress was told during hearings on the 1970 Drug Abuse Control Amendments that cannabis is monotypic and that all marijuana is derived from the plant cannabis sativa, L. Hearings on H.R. 11701 and H.R. 1373 before the Subcommittee on Public Health and Welfare of the House Committee on Interstate and Foreign Commerce, 91st Cong., 2d Sess., Ser. 46, pt. 1, at 367 and pt. 2, at 843 (1970). There is no indication Congress had any contrary information.

As recently as 1971, Congress was told, "Although there are many varieties [of marijuana], it is now generally agreed they all belong to a single species, *Cannabis Sativa,* which exhibit variations because of ge-

netic plasticity and different environmental conditions." Marihuana and Health, A Report to the Congress From the Secretary Department of Health, Education, and Welfare, at 19–20 (1971).

Indeed the prevalent view in the scientific community in 1971 and even today is that cannabis is monotypic. Richard Evans Schultes, professor of natural sciences at Harvard University, regarded by plaintiff's witness Dr. Cruden as the leading authority on the taxonomy of cannabis, co-authored the scholarly study entitled Cannabis: An Example of Taxonomic Neglect, cited supra. That study notes cannabis has been and still is generally considered to be monotypic. Id. at 340. It recognizes that, "This establishment of the monotypic concept is reflected in modern chemical publications and even in the drafting of laws in some of the countries that control the use of Cannabis." Ibid.

Dr. Schultes was a witness whose testimony was referred to in United States v. Adams, Leary v. United States, United States v. Moore, and United States v. Rothberg, supra. At the time of the Adams, Leary, and Moore trials, Dr. Schultes believed cannabis to be monotypic. As observed in Rothberg, 351 F.Supp. at 1116, he subscribed to this opinion, generally accepted by other taxonomists, until after he made a field study in Afghanistan in 1971.

■ Thus in 1971, when Iowa followed Congress in adopting the model act definition of marijuana for the second time, the established scientific view was that cannabis is monotypic, properly denominated cannabis sativa. The fact Dr. Schultes and other taxonomists changed their views regarding proper classification and nomenclature for cannabis subsequent to the 1971 Iowa legislation can hardly alter the legal meaning of the 1971 definition. It is the 1971 legislative intent which controls, not the subsequent views of scientists.

■ We believe the decisions are correct which hold Congress and states which have defined marijuana as cannabis sativa in statutes prior to and including 1971 have intended that term to include all cannabis. We conclude that was the intent of the Iowa legislature. We hold the present statutory definition of marijuana in Code § 204.101(16) has that meaning.

■ III. This meaning is also manifested in separate provisions of the Iowa Uniform Controlled Substances Act. Schedule I appears clearly to include cannabis as a controlled substance in the same category as marijuana. It incorporates by reference "[a]ny material, compound, mixture or preparation which contains any quantity of * * *: * * * q. Tetrahydrocannabinols." § 204.204(4), The Code. As noted by plaintiff's witness, Dr. Cruden, all cannabis contains tetrahydrocannabinols in some quantity, and that chemical, THC, is considered its mind-affecting ingredient. Therefore, as observed by the court of appeals in Rothberg, 480 F.2d at 536, the question raised by plaintiff is actually academic. The inclusion of all material containing THC in Schedule I is broad enough to include all cannabis.

■ IV. At the root of plaintiff's argument is a contention that the Iowa legislature was mistaken if it believed in 1971 its definition of marijuana embraced all cannabis. He asserts judicial interpretation giving effect to legislative intent erroneously overlooks that mistake and enlarges the plain meaning of the language used in the statute. This contention presupposes the legislature was mistaken. It also presupposes the language of the statute alone manifests legislative intent. As our discussion of the statute shows, we believe neither presupposition is justified. Treating the statute's meaning as a question of law, and applying pertinent principles of statutory interpretation, we have found the statutory definition makes marijuana synonymous with all plants in the cannabis genus, whether there is in fact more than one species of the plant or not.

The current debate among scientists relating to whether there is more than one

species of cannabis casts a cloud on the usage of the nomenclature cannabis sativa among scientists. To obviate any possibility of public misunderstanding of statutory employment of such nomenclature, the legislature might well consider affirming its legislative intent in terms acceptable to all taxonomists. See State v. Willis, 218 N.W.2d 921 (Iowa 1974).

The definition of marijuana in New York's statute would accomplish this. That definition is identical to our own except that instead of the language, " 'Marijuana' means all parts of the plant Cannabis sativa L., * * *," it provides " 'Marijuana' means all parts of the plant of the genus Cannabis, * * *." N.Y. Public Health Law § 3302 (McKinney's Consol.Laws, c. 45, Supp.1974).

Plaintiff's certiorari challenge of the defendant trial court's order sustaining the State's motion in limine is without merit.

Writ annulled.