**Nora D. SATTY, on behalf of herself and all others similarly situated, Plaintiff-Appellee,**

v.

**NASHVILLE GAS COMPANY, Defendant-Appellant.**

**No. 75–1083.**

United States Court of Appeals, Sixth Circuit.

Aug. 8, 1975.

Charles K. Wray, Bass, Berry & Sims, Stafford F. McNamee, Jr., Nashville, Tenn., for defendant-appellant.

Robert W. Weismueller, Jr., Tom H. Williams, Jr., Nashville, Tenn., for plaintiff-appellee.

Before MILLER and ENGEL,* Circuit Judges, and TAYLOR,** District Judge.

ROBERT L. TAYLOR, District Judge.

After exhausting her remedies through the Equal Employment Opportunity Commission, this action was initiated by Nora Satty against the Nashville Gas Company for alleged sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The District Court after hearing testimony from plaintiff denied her motion for a temporary injunction but thereafter on November 4, 1974 awarded reinstatement with seniority, back pay, including sick leave, and attorney fees. For the reasons set forth below, we affirm.

Undisputed the facts are relatively simple. Plaintiff was initially hired by Nashville Gas as a junior clerk in the customer accounting department on March 24, 1969, and was later promoted to clerk on December 2, 1969. Having previously informed her employer in August 1972 of her pregnancy, she was placed on maternity leave on December 29, 1972, pursuant to the request of the vice-president in charge of personnel. Plaintiff's child was born twenty-five days later· on January 23, 1973. Under Nashville Gas' policy, an employee can be granted pregnancy leave for a period

---

* Judge Engel did not participate in the consideration of this decision.

** The Honorable Robert L. Taylor, United States District Judge for the Eastern District of Tennessee, sitting by designation.

of up to one year. Following the child's birth and after a six week checkup the employee is permitted to return to full time status when a permanent position becomes available and when the opening is not bid on by a permanent employee. During the interim between the six week checkup and reemployment on a permanent basis, Nashville Gas attempts to provide the employee with temporary work. As a consequence of this policy, the employee who is placed on pregnancy leave, unlike the male employee who is absent due to a nonwork-related disability, loses her accumulated seniority for job bidding purposes but otherwise retains her accrued vacation and pension seniority. Similarly, while the employee is permitted to apply her accumulated vacation time to her absence during pregnancy, sick leave may not be applied to a pregnancy-related absence. It is these latter two specific policies that are the object of plaintiff's attack.[1]

On March 14, 1973, plaintiff returned to work as a temporary employee and was paid $130.80 per week, as opposed to $140.80 she earned prior to her leaving in December, 1972; however, this temporary employment ended on April 13, 1973 when her job was completed. Thereafter, in order to collect unemployment compensation insurance, plaintiff requested Nashville Gas to change her employment status from pregnancy leave to complete termination. It was stipulated by the parties that between December 29, 1972 and May 10, 1973, plaintiff applied for three full-time positions with Nashville Gas which became available; however, in each case a permanent employee with job seniority was awarded the position. Had plaintiff retained her job bidding seniority, she would have been awarded the positions.

Against this background, the principal issue before the Court is whether Nashville Gas' pregnancy policy violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000-5, as amended. In holding that defendant's policy is violative of the Civil Rights Act of 1964, we note that this question, as framed in the context of the impact of the Supreme Court's decision in *Geduldig v. Aiello*, 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974), is one of first impression in this Circuit. The same issue has been addressed in four other circuits.[2]

Central to the dispute here is the controlling impact of the Supreme Court's decision in *Aiello* and, more particularly, the weight this Court should attribute to footnote 20 of that opinion. If *Aiello* and footnote 20 are dispositive of the issue whether a distinction between pregnancy-related disabilities and other disabilities is sex based, then the threshold issue is easily resolved against plaintiff. If however, *Aiello* is not viewed as dispositive, then the Court must proceed to consider alternative constructions.

### Aiello

California, in establishing an employee supported disability insurance system for nonwork-related injuries, chose to exclude pregnancy-related disabilities from the scope of the program's operation. Four women who had experienced a period of pregnancy-related disability challenged their exclusion from the program's benefits, and a three-judge district court found such exclusion violated the Equal Protection Clause. However, Justice Stewart speaking for the majority, adopted the "rationally supportable" standard of justification,[3] and held that the state's legitimate interest in seeking to protect the program's financial integ-

---

1. Unlike *Gilbert v. General Electric Co.*, 519 F.2d 661 (4th Cir., 1975); *Wetzel v. Liberty Mutual Insurance Co.*, 511 F.2d 199 (3rd Cir., 1975) *cert. granted*, 1975, 421 U.S. 987, 95 S.Ct. 1989, 44 L.Ed.2d 476 and *Communications Workers of America v. American Telephone & Telegraph*, 513 F.2d 1024 (2d Cir., 1975), Nashville Gas has no disability income protection plan for its employees.

2. *Gilbert v. General Electric Co., supra; Wetzel v. Liberty Mutual Insurance Co., supra; Communications Workers v. American T. & T. Co., supra; Holthaus v. Compton & Sons, Inc.*, 514 F.2d 651 (8th Cir., 1975).

3. 417 U.S., at 495, 94 S.Ct. 2485.

rity and self-supporting character allowed it to address "itself to the phase of the problem which seems most acute to the legislative mind . . ."[4] Thus, cast in terms of the administration of a social welfare program, under the Court's interpretation the line drawn by the California legislature was between pregnancy-related disabilities and other disabilities, not between male and female employees. The Court peripherally amplified in footnote 20 its basis for concluding that disability and not sex was the line drawn by California legislature:

"The dissenting opinion to the contrary, this case is thus a far cry from cases like *Reed v. Reed*, 404 U.S. 71, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971), and *Frontiero v. Richardson*, 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973), involving discrimination based upon gender as such. The California insurance program does not exclude anyone from benefit eligibility because of gender but merely removes one physical condition—pregnancy—from the list of compensable disabilities. While it is true that only women can become pregnant, it does not follow that every legislative classification concerning pregnancy is a sex-based classification like those considered in *Reed, supra,* and *Frontiero, supra.* Normal pregnancy is an objectively identifiable physical condition with unique characteristics. Absent a showing that distinctions involving pregnancy are mere pretexts designed to effect an invidious discrimination against the members of one sex or the other, *lawmakers are constitutionally free* to include or exclude pregnancy from the coverage of legislation such as this on any reasonable basis, just as with respect to any other physical condition." 417

U.S. at 496, n. 20, 94 S.Ct. at 2492 (emphasis added)

■■■ It is apparent from our reading of footnote 20 that the Court's observations are made in the particular and narrow confines of the state's power to draw flexible and pragmatic lines in the social welfare area. To conclude that the Court's footnote is dispositive of an action brought under Title VII would be to ignore the traditional doctrine that the precedential value of a decision should be limited to the four corners of the decisions' factual setting.[5] The reasoning and policy behind this doctrine are readily appreciated when *Aiello* is compared with the facts in this case. Here, the question is whether the exclusion by a private employer of pregnancy-related disabilities from its sick leave and seniority program is a violation of a congressional statute, essentially, a dissimilar question from the issue before the *Aiello* Court—whether a legislative classification dividing disabilities into two classes for the purposes of a disability income protection program finds a rational basis. It is this very degree of dissimilarity that rejects a blind adherence to footnote 20. To import a different effect to footnote 20 would be to extend the impact of *Aiello* beyond its intended effect. It would appear harsh to read into footnote 20 that the Court expected, in passing on the propriety of a legislative classification under the Equal Protection Clause, to preclude all future discussion of statutory interpretation under a relatively new act such as the Civil Rights Act of 1964. Unless squarely faced with the Act, the Court has evidenced a reluctance to examine its parameters or the interpretive functions of the Equal Employment Opportunity Commission (E.E. O.C.).[6] While mindful of the Court's

4. *Id.* (citing *Williamson v. Lee Optical Co.*, 348 U.S. 483, 489, 75 S.Ct. 461, 465, 99 L.Ed. 563 (1955)).

5. *Cohens v. Virginia,* 6 Wheaton, 19 U.S. 264, 399–400, 5 L.Ed. 257 (1821); *Armour & Co. v. Wantock,* 323 U.S. 126, 132–133, 65 S.Ct. 165, 89 L.Ed. 118 (1944); *rehearing denied,* 323

U.S. 818, 65 S.Ct. 427, 89 L.Ed. 649 (1945). *Accord, Communications Workers of America v. American Telephone & Telegraph Co., supra,* at 1028–29.

6. *See Cleveland Bd. of Educ. v. LaFleur,* 414 U.S. 632, 640 n. 8, 653 n. 2, 94 S.Ct. 791, 39 L.Ed.2d 52 (Powell, J., concurring) (1974). In

language in footnote 20, caution dictates that we not make it a talisman for Title VII actions.[7]

## E.E.O.C. Guidelines

Turning from *Aiello* for guidance, it is logical that we should look to the agency charged with the administration of Title VII. In this regard, 29 C.F.R. § 1604.-10(b) provides:

"(b) Disabilities caused or contributed to by pregnancy, miscarriage, abortion, childbirth, and recovery therefrom are, for all job-related purposes, temporary disabilities and should be treated as such under any health or temporary disability insurance or sick leave plan available in connection with employment. Written and unwritten employment policies and practices involving matters such as the commencement and duration of leave, the availability of extensions, and accrual of seniority and other benefits and privileges, reinstatement, and payment under any health or temporary disability insurance or sick leave plan, formal or informal, shall be applied to disability due to pregnancy or childbirth on the same terms and conditions as they are applied to other temporary disabilities."

■ We are urged in this case to reject the lessons of *Griggs v. Duke Power Co.*, 401 U.S. 424, 91 S.Ct. 849, 28

L.Ed.2d 158 (1971), and *Phillips v. Martin Marietta Corp.*, 400 U.S. 542, 545, 90 S.Ct. 496, 27 L.Ed.2d 613 (1971) (Marshall, J., concurring), which accord deference to the Commission's interpretation, under the authority of the Supreme Court's recent decision in *Espinoza v. Farah Manufacturing Co.*, 414 U.S. 86, 96, 94 S.Ct. 334, 38 L.Ed.2d 287 (1973). There, the Court, rejecting the Commission's regulation that discrimination on the basis of citizenship is tantamount to discrimination on the basis of national origin, noted that the agency had formerly held a different view, but, most importantly, the Court emphasized that "application of the guideline would be inconsistent with an obvious congressional intent . . ."[8] Unlike the situation before the Court in *Espinoza*, we do not have before us any legislative history indicating that the E.E.O.C. interpretation conflicts with the congressional intent. We are not in a position to say that the agency position contravenes the letter or spirit of the Act.[9] Thus, absent clear indicia in the form of legislative history that the agency interpretation is unreasonable or unnatural, we must defer to the Commission's construction of the statute as articulated under 29 C.F.R. § 1604.10(b).[10]

■ We note that in holding that disparate treatment between pregnancy leave and other sick leave constitutes a violation of Title VII, we reaffirm this

---

this vein, see also the remarks of Judge Bryan in *Communications Workers v. American Tel. & Telegraph Co.*, supra, at footnote 11.

**7.** It is urged that because E.E.O.C. argued in its amicus brief in *Aiello* that the Court's holding would affect similar actions brought under Title VII and that because the Equal Protection issue was decided against the E.E.O.C., the Court intended its holding to extend to Title VII actions. Absent any reference at all to Title VII in *Aiello*, this argument, if adopted, would impermissibly distort the principle of *stare decisis*.

**8.** 414 U.S. at 94, 94 S.Ct. at 339.

**9.** It is similarly suggested that E.E.O.C.'s guidelines are in variance with the Wage and

Hour Administrator's policy toward pregnancy under the Equal Pay Act, 29 U.S.C. § 206(d); 29 C.F.R. § 800.100, and the Office of Federal Contract Compliance's interpretation of Executive Order 11246, 3 C.F.R. 172, which permits a distinction to be drawn between pregnancy and other disabilities. However, here, we seek to interpret Title VII and not the Equal Pay Act or Executive Order 11246.

**10.** *Accord, Gilbert v. General Electric Co.*, supra; *Wetzel v. Liberty Mutual Insurance Co.*, supra; *Communications Workers of America v. American T. & T. Co.*, supra; *Holthaus v. Compton*, supra; *Vineyard v. Hollister Elementary School District*, 64 F.R.D. 580 (N.D. Cal.1974).

Court's former decision in *Farkas v. Southwestern City School District*, 506 F.2d 1400 (6th Cir. 1974), where the District Court was affirmed and the conclusion reached that exclusion of normal pregnancy from a sick leave program constituted sex discrimination under Title VII. We are not persuaded that that position is incorrect. Though the legislative history of Title VII contains no explicit reference to sex discrimination, we learn from its declaration of policy that its principal aim was to eliminate artificial barriers that fostered disparate treatment, absent a compelling and founded reason for such disparity.

 Appellant contends that the test of the validity of an employment policy under Title VII is not different from the test of validity under the Fourteenth Amendment.[11] This argument, however, presupposes that the lawful scope of employment policies under the former Act is coextensive with the latter constitutional provision. We believe that the better approach permits Title VII under the Commerce Clause to extend beyond the reach of the Equal Protection Clause. *Heart of Atlanta Motel v. United States*, 379 U.S. 241, 85 S.Ct. 348, 13 L.Ed.2d 258 (1964); *Katzenbach v. McClung*, 379 U.S. 294, 85 S.Ct. 377, 13 L.Ed.2d 20.[12] Otherwise, Title VII's effective reach would be limited by the decisions of the Supreme Court, a result effectively curtailing its implementation.

### Relief

 The District Court, finding that Nashville Gas' policy violated the provisions of 42 U.S.C. § 2000e–5, ordered that plaintiff recover sick leave benefits that should have been paid during her maternity leave; back wages from March 14, 1973, including any across the board increases, and reduced by temporary wages and unemployment insur-

ance; reinstatement with full seniority and recovery of reasonable attorney fees.

Under the guidelines of *Meadows v. Ford Motor Company*, 510 F.2d 939 (1975), and *Head v. Timken Roller Bearing Company*, 486 F.2d 870 (6th Cir. 1973), we find the District Court's relief appropriate.

The judgment of the District Court is affirmed.

11. *Accord, United States v. Chesterfield County School District*, 484 F.2d 70, 73 (4th Cir. 1973).

12. *Accord, Communications Workers v. American Telephone & Telegraph*, 513 F.2d at 1031. *See also id.* at n. 12. It is submitted that an anomaly would exist if public and private employers were held to different standards under Title VII and the Fourteenth Amendment cases. It would appear, however, that any disparity would have been mitigated by inclusion of "governments" within the meaning of person under the 1972 Amendments. 42 U.S.C. § 2000e.