328 So.2d 361 (1976)
HANCOCK BANK et al.
v.
Ira GADDY, Jr., et al., Incorporators of Proposed First State Bank and Trust Company.
No. 48538.
Supreme Court of Mississippi.
March 9, 1976.
*362 Mize, Thompson & Blass, White & Morse, Gulfport, Stennett, Wilkinson & Ward, James A. Peden, Jr., Horace Steele, Howie, Montgomery & Montjoy, Jackson, W.H. Montjoy, Greenwood, for appellants.
Martin & Taylor, Gulfport, Fox & Gowan, Jackson, for appellees.
Before PATTERSON, ROBERTSON and SUGG, JJ.
ROBERTSON, Justice:
After a full three-day hearing before the State Banking Board, the board approved the application of the prospective incorporators for a certificate of authority to incorporate the First State Bank and Trust Company, Gulfport, Mississippi. Hancock Bank, Gulf National Bank and Merchants Bank and Trust Company, appealed to the Chancery Court of the First Judicial District of Harrison County. That Court affirmed the decision of the State Banking Board. Three objecting banks thereupon appealed to this Court.
Pursuant to Mississippi Code Annotated section 81-3-13 (Supp. 1975), the prospective incorporators of the First State Bank gave notice to the State Comptroller, applied for a certificate of authority to incorporate, and filed with the State Comptroller a copy of the proposed articles of incorporation duly sworn to by one of the prospective incorporators.
In accordance with Sec. 81-3-13, the State Comptroller promptly considered the application, examined the proposed articles of incorporation, made the investigation required of him, recorded his findings in writing, and drew up his recommendations *363 to the banking board. The statute then requires of the State Bank Comptroller:
"He shall thereupon, in writing, call a meeting of the board to give consideration to his findings and recommendations, such call to be issued at least ten (10) days in advance of the meeting. The state comptroller shall at the same time give notice of the meeting of the state banking board to the prospective incorporators of the proposed new bank and to any and all other interested persons and shall extend to them an invitation to be heard in writing or in person by the state banking board." Miss. Code Ann. § 81-3-13 (Supp. 1975). (Emphasis added).
All of this was done by the State Comptroller. The statute then requires of the banking board:
"The state banking board, at its meeting, shall consider the findings and recommendations of the state comptroller and shall hear such oral testimony as he may wish to give, and shall also receive information and hear testimony from the prospective organizers of the proposed bank and from any and all other interested persons bearing upon the public necessity for the organization and operation of the new bank. (Emphasis added).
"After considering the record submitted to it by the state comptroller and his oral testimony and considering such other information and evidence, either written or oral, which has come before it, the state banking board shall decide if it has before it sufficient information and evidence upon which it can dispose of the application to form the new bank.
......
"If the state banking board, or a majority thereof, shall determine that it has before it sufficient evidence and information upon which to base a decision, then it shall render a written opinion and decision in the matter. If its decision is favorable, then the state banking board shall order the state comptroller to give to such prospective incorporators a certificate under his hand and official seal of the department of bank supervision authorizing the prospective incorporators to proceed to incorporate and organize as is provided in section 81-3-7." Miss. Code Ann. § 81-3-13 (Supp. 1975).
The Hancock Bank, the Gulf National Bank, and the Merchants Bank and Trust Company of Bay St. Louis, accepted the published invitation to appear and be heard, and thereafter participated in all hearings and proceedings before the banking board.
The testimony given and the exhibits filed with the banking board consist of 1869 pages in nine bound volumes. When the prospective incorporators and the three objecting banks finally rested, the banking board determined, in accordance with the statute, that it had "before it sufficient evidence and information upon which to base a decision".
The board then rendered its unanimous written opinion and decision in the matter which was that the State Comptroller "give to such prospective incorporators a certificate under his hand and official seal of the department of bank supervision authorizing the prospective incorporators to proceed to incorporate and organize as is provided in section 81-3-7."
The three objecting banks appealed to the Chancery Court of the First Judicial District of Harrison County. That court, acting through Chancellor Howard L. Patterson, Jr. of Hattiesburg, who was designated to review the matter as an appellate court, affirmed the decision of the banking board, after hearing and considering oral arguments and after thoroughly and completely reading and studying the transcript of the hearing before the banking board, and after "carefully examining and studying each of the exhibits entered at said hearing and the briefs of counsel;" and *364 after reviewing the "applicable statutes and decisions of the Mississippi Supreme Court."
There is no merit in assignments of error 1, 2, 5 and 6.
Assignments of error 3, 4 and 7 were:
"The Banking Board erred in overruling the motion for a bill of particulars and the motions for subpoena duces tecum filed by the objectors in an effort to obtain discovery concerning the finding and recommendation of the State Bank Comptroller, and the lower court erred in not reversing on this ground."
"The Banking Board erred in not permitting the objectors to invoke the rule so as to prevent witnesses from hearing the testimony of prior witnesses, and the lower court erred in not reversing on this ground."
"The Banking Board erred in finding that the public necessity requires the incorporation of the First State Bank and Trust Company, and the lower court erred in not reversing on this ground."
The hearing before the banking board is not an adversary proceeding in the true sense of the term, nor is it a judicial proceeding. The full panoply of pleadings and processes for discovery provided for full-fledged litigants in law and equity courts is not available for use before an administrative board.
In Planters Bank v. Garrott, 239 Miss. 248, 122 So.2d 256 (1960), this Court affirmed the decree of the chancery court, which in turn affirmed an order of the State Banking Board authorizing the establishment of a new bank in Tunica County. In deciding Planters Bank, this Court said:
"The authorities are agreed that a State Banking Board or Commission is an administrative body, and not an inferior judicial tribunal, as suggested by the appellant's attorneys in their brief. [Citing Authorities]. That the Board determines facts or passes upon questions which may affect parties and exercises judgment and discretion does not imply that it has judicial power. State ex rel. Dybdal et al. v. State Securities Commission, supra [145 Minn. 221, 176 N.W. 759]. And the fact that some of its functions may be quasi-judicial in their nature does not make it a court." 239 Miss. at 276, 122 So.2d at 267.
In determining the extent of judicial review, this Court, in Planters Bank, also said:
"(2) that a court of competent jurisdiction has the power to review any order made by an administrative commission to determine whether it is supported by substantial evidence, or is purely arbitrary or capricious, beyond the Commission's power, or violates some statutory or constitutional right, of an interested party; [and] (3) that in reviewing an order of an administrative commission, power to make the order and not the mere expediency or wisdom of having made it is the question; ... ." 239 Miss. at 278, 122 So.2d at 268.
We reiterated and reaffirmed the limited scope of appellate judicial review in Mississippi State Tax Commission v. Mississippi-Alabama State Fair, 222 So.2d 664 (Miss. 1969); Britton & Koontz First National Bank v. Biglane, 285 So.2d 181 (Miss. 1973); Mainstream Savings & Loan Association v. Washington Federal Savings & Loan Association, 325 So.2d 902 (Miss. 1976); and Board of Trustees of the Pass Christian Municipal Separate School District v. Acker, 326 So.2d 799 (Miss. 1976).
In discussing the statute setting up the procedure for organizing a new bank, this Court, in Planters Bank, had this to say:
"The statute which we have under review was enacted in the exercise of the police power of the state, in the interest of the public, and as an aid to insure *365 safe banking. Its purpose is not to deter competition or foster monopoly, but to guard the public and public interests against imprudent banking. By the enactment of the statute, the Legislature, in our opinion, did not intend that one or more established banks may keep out another merely because the banking facilities sufficiently take care of the banking business. The applicants for a charter were not required to show that the existing bank was not rendering adequate service to its customers, or that a new bank would be in a position to render better service to the public than the bank already in existence." 239 Miss. at 280, 122 So.2d at 269.
Section 81-3-13 provides:
"The state comptroller shall then make an investigation of the number of unit banks and location thereof (excluding branch offices which shall not be considered as banks) then serving the area in which the proposed new bank is to be located, the ratio of capital funds to total deposits therein, the record of earnings and condition of existing banks and what effect, if any, a new unit bank would have on them, the number of previous bank failures in the area and their liquidation record and banking history generally in the area, the population of the area wherein the proposed bank will be located and relation to number of banks operating therein, reasonable prospects of growth of the area and its financial resources and whether the same are static, progressive or retrogressive, expectation of profitable operation of the proposed new bank, and the morals and business character of the prospective incorporators and such further investigation to determine whether the public necessity requires that the proposed new bank should be chartered and permitted to operate."
There are at least five volumes of testimony and exhibits on the eight specific areas to be investigated and on the question of public necessity.
The proof was that no unit bank has been organized, incorporated or transferred to Gulfport since 1944 when the Gulf National Bank was organized. There are only three unit banks in the area; the Hancock Bank and Gulf National Bank in Gulfport and the Merchants Bank and Trust Company in Bay St. Louis.
The condensed statements of condition of the Hancock Bank, Gulf National Bank and Merchants Bank and Trust Company for the years 1967 through 1972 show a steady and healthy growth of deposits and capital for all three.
The 1972 Mississippi Bank Directory shows that the total deposits for the Hancock, Gulf and Merchants banks were $162,600,000, or an average of $54,200,000 for each bank, as compared with the $20,000,000 average for each other Mississippi bank. The Bank Directory also shows for Gulfport and Biloxi a population of 27,500 for each bank as against an average population of 6,130 for each other Mississippi bank.
In evidence was the issue of the Gulfport, Mississippi, Daily Herald for January 26, 1973, which contained this prediction:
"At the regular annual meeting of the stockholders of Gulf National Bank held in the lobby of the main bank in down-town Gulfport Tuesday, January 23, Charles A. Cowart, president, reported that 1972 was a good year for the bank and that 1973 is anticipated to be the `best year ever'." (Emphasis added).
We note that President Cowart was one of the principal witnesses for the objectors at the hearing before the banking board.
An exhibit, the Deposit Guaranty Quarterly Review, January, 1973, contains this forecast:
"Southern Mississippi is projected to gain a quarter of a million persons *366 over the next three decades with Biloxi/Gulfport and Pascagoula/Moss Point setting the pace as a result of expanding industry and port facilities."
Five volumes of testimony and exhibits are replete with examples of the steady and unusual growth of the Gulfport-Biloxi area and indeed of the entire Mississippi Gulf Coast, as compared with the rest of Mississippi and even with other southeastern states. The unanimous long-term predictions and forecasts found in the record are for unusual and phenomenal growth over the years for the Mississippi Gulf Coast, as compared with the rest of Mississippi.
There is no merit in the objecting banks' contention that the appellees failed to meet their burden of proof to show that a public necessity existed in the Gulfport area for the establishment of a new bank and that there was no substantial evidence to support the finding of the State Banking Board.
We are in accord with the finding of the chancery court that the three objecting banks were afforded a full and fair hearing before the State Banking Board and that none of their constitutional rights were violated. We are also in accord with the finding of the chancery court that the order of the banking board was supported by substantial evidence and was neither arbitrary nor capricious.
The decree of the chancery court affirming the order of the banking board is, therefore, affirmed.
AFFIRMED.
GILLESPIE, C.J., PATTERSON, INZER, P. JJ., and SMITH, SUGG and BROOM, JJ., concur.
WALKER, J., took no part.