QUAKER OATS CO., Appellee,

v.

CEDAR RAPIDS HUMAN RIGHTS COMMISSION, Appellant.

No. 60346.

Supreme Court of Iowa.

July 26, 1978.

Richard C. Turner, Atty. Gen., Shirley G. Steele, Asst. Atty. Gen. and David F. McGuire, City Atty., Cedar Rapids, for appellant.

Shuttleworth & Ingersoll, Cedar Rapids, for appellee.

LeGRAND, Justice.

The question here is whether a short-term disability income plan in effect for all employees of Quaker Oats Co. (hereafter Quaker) illegally discriminates on the basis of sex by excluding "disabilities due to pregnancy or disorders resulting therefrom." The Cedar Rapids Human Rights Commission (hereafter Commission) appeals from a decree holding it does not. We reverse and remand for further proceedings as noted herein.

This case arose upon a complaint filed by Sandra K. Tennyson (hereafter claimant), a laboratory technician employed by Quaker, who submitted to an abortion upon the advice of her doctor. After the abortion, claimant underwent a tubal litigation to prevent further pregnancies. She was off work for approximately five weeks. Her claim for disability benefits under the company's plan was disallowed because it was "pregnancy related."

She filed a complaint with the Commission, alleging the denial of disability benefits constituted sex discrimination as defined in the Cedar Rapids Human Rights Ordinance. (Ordinance 54–74, Ch. 69, Municipal Code) and § 601A.6(1)(a), The Code. Following the procedure outlined in the ordinance, the Commission made findings of probable cause. Conciliation was then unsuccessfully attempted, following which an evidentiary hearing was conducted. The Commission found the denial of benefits for the claimant's pregnancy-related disability was "discriminatory based on sex contrary to ordinance 54–74 of the City of Cedar Rapids and to Ch. 601A of the Iowa Code."

The Commission ordered Quaker to cease and desist from excluding pregnancy related disabilities from its plan, to pay disability benefits to claimant for the time she was absent from work, and to pay disability benefits to all women who took pregnancy related disability leave from July 3, 1973 to July 3, 1975, and up until the date of the Commission's order.

Quaker filed a petition in district court for a review of this order, alleging the exclusion was not sexually discriminatory. The Commission, in turn, filed an application seeking a mandatory injunction and a writ of mandamus to compel Quaker to carry out the terms of its order.

The trial court ruled in favor of Quaker, holding the denial of benefits was not violative of either the Iowa Civil Rights Act or the Cedar Rapids Human Rights Ordinance. In reaching this conclusion the trial court relied principally upon *General Electric Co.*

*v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976). It reversed the Commission's order and remanded the case to that body for "whatever further proceedings, if any, may be necessary."

I. Quaker's Short-Term Disability Income Plan is described and explained in a brochure distributed to the employees. A copy of this instrument was introduced as an exhibit. The plan protects Quaker's employees in case of illness or accident. Its stated purpose is this:

"If you are absent from work because of personal illness or injury, your expenses continue even though you are unable to earn a regular income. The Quaker Illness and Accident Plan is designed to reduce your financial worries in such a situation by providing a portion of your regular pay when non-occupational illness or injury occurs."

The plan contains this exclusion:

"The following disabilities are not covered by the Plan:

Disabilities which are intentionally self-inflicted

Disabilities due to illegal use of drugs or intoxicants

Disabilities due to the commission of felonious acts

Disabilities incurred before the employee was eligible for the plan

Disabilities incurred during military leaves of absence

*Disabilities due to pregnancy or disorders resulting therefrom*

Disabilities covered by state workmans compensation laws

Disabilities incurred while working for another employer." (Emphasis supplied.)

It is noteworthy that seven of the eight exclusions apply equally to all employees, both male and female. The eighth relates only to females. The question we must answer is whether the exclusion which denies payment for "disabilities due to pregnancy or disorders resulting therefrom" constitutes sex discrimination.

II. Throughout this case, the Cedar Rapids ordinance and the Iowa Civil Rights Act (Ch. 601A, The Code) were both considered as applicable to the claim. However, we believe the only matter before us is the alleged violation of the ordinance. The complaint was filed with the Cedar Rapids Human Rights Commission. The appeal to district court was from the decision of that body, and the appeal now here is from the decree reversing the Commission. Although it is true the provisions of the ordinance and those of the statute are for our purposes identical, it is nevertheless a violation of the ordinance upon which claimant relies. The commission has no jurisdiction to enforce the statute.

It is true, of course, the ordinance depends on § 601A.17, The Code, for its authority. That section provides:

"*Local laws may implement this chapter.* Nothing contained in any provision of this chapter shall be construed as indicating an intent on the part of the general assembly to occupy the field in which this chapter operates to the exclusion of local laws not inconsistent with this chapter that deal with the same subject matter."

It is also true we must refer from time to time in our consideration of this appeal to Ch. 601A because our construction of the ordinance depends on the statutory plan established there. *See City of Iowa City v. Westinghouse Learning Corporation*, 264 N.W.2d 771, 772–73 (Iowa 1978).

We believe it is important to point out, if not for this case, at least for future ones that the commission has jurisdiction only for violations of the ordinance.

III. Ordinance 54–74, Ordinances of the City of Cedar Rapids (Ch. 69 of the Municipal Code) provides in part as follows:

"Section 69.11. Unfair Employment Practices (a):

It shall be unfair or discriminatory for any: (1) person to refuse to hire, accept, register, classify, upgrade or refer for employment, discharge any employee, or otherwise discriminate in employment against any applicant for employment or any employee because of race,

creed, color, sex, national origin, religion, or ancestry of such applicant or employee, unless based upon the nature of the occupation."

This is virtually identical with § 601A.6(1)(a) of The Code.

■ Perhaps we should state here what this case is not about. It is not a determination that insurance policies must be drawn to include pregnancy-related disabilities. We say only that an employer must cover such risks because of the provisions in the Cedar Rapids Human Rights Ordinance proscribing discrimination based on sex.

Neither is this to be taken as an expression of this Court's view concerning abortion itself. We consider only whether claimant's *disability* was one for which Quaker could not, under the ordinance, withhold the benefits of its short-term income policy.

Ordinarily our decision in *Cedar Rapids Community School District v. Parr*, 227 N.W.2d 486 (Iowa 1975), would be dispositive of this case. However, the decision of the United States Supreme Court in *General Electric Co. v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976) causes us to examine *Parr* anew. This is because *General Electric* reversed the 4th Circuit opinion upon which we had strongly relied in *Parr*.

In *Parr* we held that a school board requirement which compelled pregnant teachers to leave their employment at the end of the fifth month of pregnancy, restricted their right to return to work after delivery, and denied them disability benefits for absences due to pregnancy was sexually discriminatory.

We quote from that opinion:

"Plaintiffs vigorously argue this portion of the regulation [dealing with pregnancy absences] does not sexually discriminate because men and women are not similarly circumstanced regarding pregnancy. More simply stated, it is contended that since the provision treats all those similarly circumstanced alike, i. e., pregnant teachers, there exists no sex discrimination. This argument misses the mark.

"Whether or not pregnant females are treated the same or differently is not the focal point. The true issue is whether all disabilities, pregnancy included, are treated the same. In other words, the question is not whether the regulation has discriminatory application within the class established but rather does it discriminate as to the class singled out. * *

"Every human, regardless of sex, is subject to crises or physiological disabilities of the body. Here the regulation isolates pregnancy from all other disabilities or physical conditions and makes it subject to the restricted provisions therein provided. Noticeably, in the case of other illnesses or debilitating conditions an individual is not required to cease employment at a fixed time and return to work following recovery at a set date regardless of the employee's wishes or medical advice. Any person affected by a disability, other than pregnancy, ceases employment and thereafter returns to work when he or she alone deems it proper to do so. But this is not the case where the individual becomes pregnant. Unquestionably, such discriminate treatment is linked to sex alone." (227 N.W.2d, p. 493).

These were the very principles espoused in *Gilbert v. General Electric Co.*, 519 F.2d 661 (4th Cir. 1975). When they were repudiated by the United States Supreme Court in reversing the 4th Circuit, our *Parr* case was on a collision course with *General Electric Co. v. Gilbert*.

The facts in *General Electric* are almost identical with those in the present case. There, too, a company disability plan excluded disabilities arising out of pregnancy. The question was whether such an exclusion constituted sex discrimination in violation of Title VII of the Civil Rights Act of 1964. (42 U.S.C. § 2000e, et seq.) The Iowa Civil Rights Act is, for present purposes, the same as the federal act.

*General Electric* is a case of statutory construction. It held the company's plan

does not violate the provisions of Title VII. An earlier case, *Geduldig v. Aiello,* 417 U.S. 484, 494–496, 94 S.Ct. 2485, 2490–2491, 41 L.Ed.2d 256, 263–64 (1974), had already decided that such provisions were not violative of the equal protection clause of the constitution. Hence, we have from the Supreme Court a decision both on constitutional grounds and on statutory construction that provisions similar to that now before us are not sex discriminatory.

■ IV. At the risk of oversimplification, we believe our decision in this case rests on whether we stay with the rule announced in *Parr* or abandon it in favor of the reasoning and result reached in the *General Electric* case. In reaching our conclusion, we are construing our own statute (or ordinance). When, as here, no federal question is involved, we have the final say in such matters. *Cassady v. Wheeler,* 224 N.W.2d 649, 652 (Iowa 1974).

■ As pointed out in *Cassady* judicial interpretations of similar statutory language in other jurisdictions are entitled to great weight. Particular deference is due opinions of the Supreme Court of the United States. Nevertheless, after a review of the opinions of a number of other courts (to which we refer later), as well as our own, we are convinced the *Parr* rule is the correct one. Quaker urges us to adopt the reasoning and result of *General Electric,* but we decline to do so for reasons we now set out.

To say, as *General Electric* does, that provisions like the one under scrutiny here do not discriminate because they treat *all* pregnant people alike does not reach the real issue since the inevitable effect of that rule is to discriminate in the designation of the class itself. *See Cedar Rapids Community School District v. Parr,* 227 N.W.2d at 493.

At the time *General Electric* was decided, six federal circuit courts had considered the same problem and had unanimously ruled there was sex discrimination in such statutes or regulations. *See Communications Workers v. American Tel. and Tel. Co.,* *Long Lines Department,* 513 F.2d 1024 (2d Cir. 1975), vacated, 429 U.S. 1033, 97 S.Ct. 724, 50 L.Ed.2d 744 (1977); *Wetzel v. Liberty Mutual Insurance Co.,* 511 F.2d 199 (3d Cir. 1975), vacated, 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976); *Gilbert v. General Electric Co.,* 519 F.2d 661 (4th Cir. 1975), reversed, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976); *Tyler v. Vickery,* 517 F.2d 1089 (5th Cir. 1975), cert. denied, 426 U.S. 940, 96 S.Ct. 2660, 49 L.Ed.2d 393 (1976); *Satty v. Nashville Gas Co.,* 522 F.2d 850 (6th Cir. 1975), vacated in part, 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977); *Hutchison v. Lake Oswego School District,* 519 F.2d 961 (9th Cir. 1975), vacated, 429 U.S. 1033, 97 S.Ct. 725, 50 L.Ed.2d 744 (1977).

There has been little enthusiasm among state courts for the *General Electric* decision. Only Rhode Island has elected to follow it. *See Narragansett Electric Co. v. Rhode Island Comm'n. for Human Rights,* 374 A.2d 1022 (1977). On the other hand, states which have refused to do so include *Anderson v. Upper Bucks County Area Vocational Technical School,* 30 Pa.Cmwlth. 103, 373 A.2d 126 (1977); *Brooklyn Union Gas Co. v. New York State Human Rights Appeal Board,* 41 N.Y.2d 84, 390 N.Y.S.2d 884, 359 N.E.2d 393 (1976); *Massachusetts Electric Co. v. Massachusetts Commission Against Discrimination,* 375 N.E.2d 1192, 1199–1200 (Mass.1978); *Castellano v. Linden Board of Education,* 158 N.J.Super. 350, 386 A.2d 396, 400–01 (1978).

Even federal courts, including the Supreme Court itself, have been reluctant to accept the full impact of *General Electric.* *See City of Los Angeles v. Manhart,* filed April 25, 1978, —— U.S. ——, ——, 98 S.Ct. 1370, 55 L.Ed.2d 657 (Blackmun, J., concurring opinion); *Nashville Gas Co. v. Satty,* 434 U.S. 136, 98 S.Ct. 347, 54 L.Ed.2d 356 (1977); *Jacobs v. Martin Sweets Co., Inc.,* 550 F.2d 364, 370 (6th Cir. 1977).

■■ We agree with this statement in *Massachusetts Electric Co. v. Massachusetts Commission Against Discrimination,* Mass., 375 N.E.2d 1192, pp. 1198–99:

"Pregnancy is a condition unique to women, and the ability to become pregnant is a primary characteristic of the female sex. Thus, any classification which relies on pregnancy as the determinative criterion is a distinction based on sex.

\* \* \* \* \* \*

"The exclusion of pregnancy-related disabilities, a sex-based distinction, from a comprehensive disability plan constitutes discrimination. While men are provided comprehensive coverage for all disabilities which necessitate their absence from work, including male-specific disabilities, women are not provided the assurance of comprehensive protection from the inability to earn income during a period of disability. \* \* \* *See* Comment, Geduldig v. Aiello: *Pregnancy Classifications and the Definition of Sex Discrimination,* 75 Columbia Law Review 441, 457–58 (1975); Comment, *Love's Labors Lost: New Conceptions of Maternity Leaves,* 7 Harvard C.R.–C.L.L.Rev. 260, 260–62 (1972)."

As Justice Brennan said in his dissent in *General Electric,* 429 U.S. at 149, 97 S.Ct. at 414, 50 L.Ed.2d at 362:

"Surely it offends commonsense to suggest \* \* \* that a classification revolving around pregnancy is not, at the minimum, strongly 'sex related'."

Justice Stevens, dissenting in the same case, added this comment (429 U.S. at 161, 97 S.Ct. at 421, 50 L.Ed.2d at 369–70):

"Does a contract between a company and its employees which treats the risk of absenteeism caused by pregnancy differently from any other kind of absence discriminate against certain individuals because of their sex?

\* \* \* \* \* \*

"[Such a provision] places the risk of absence caused by pregnancy in a class by itself. By definition, such a rule discriminates on account of sex; for it is the capacity to become pregnancy which primarily differentiates the female from the male."

■ We hold the Quaker plan violates the Cedar Rapids ordinance. The decree of the trial court is reversed.

V. The case must be remanded to answer several questions which the trial court found it unnecessary to answer because of its decision in favor of Quaker. Quaker raised a number of constitutional issues. It also claims its Short-Term Disability Income Plan is exempt from the prohibition against sex discrimination because it is a "retirement plan or benefit system" within the meaning of § 69.17 of the ordinance. (*See also* § 601A.12, The Code.) These are matters to be decided originally by the trial court, not by us.

VI. One other matter remains. The claimant asked, and the Commission allowed, class action relief to "all women who took pregnancy related disability leave from July 3, 1973, \* \* \* up until the date" of the Commission's order.

■ In view of our remand order, we should address this matter even though it may not be a subject properly here for review. We hold the Commission is without authority to grant class relief.

Class relief is controlled by rules 42–47, Rules of Civil Procedure. They apply to actions in the courts of this state. Rule 1, R.C.P.

The general rule in other jurisdictions is that rules of civil procedure do not apply to administrative proceedings unless they specifically so provide. *See* Wright & Miller, 4 Federal Practice and Procedure, Civil, § 1013, p. 74–75 (1969). *See NLRB v. Rex Disposables Div. of D.H.J. Industries, Inc.,* 494 F.2d 588, 591–92 (5th Cir. 1974); *Raser Tanning Co. v. NLRB,* 276 F.2d 80 (6th Cir. 1960), *cert. denied,* 363 U.S. 830, 80 S.Ct. 1601, 4 L.Ed.2d 1524 (1960); *Sky Harbor Air Service, Inc. v. United States,* 348 F.Supp. 594, 595 (D.Neb.1972).

A number of state courts have applied this same rule. *Georgia State Bd. of Dental Examiners v. Daniels,* 137 Ga.App. 706, 224 S.E.2d 820 (1976); *International Ass'n of Firefighters, Local 2287, Montpelier v. City of Montpelier,* 133 Vt. 175, 332 A.2d

795 (1975); *Clary v. National Friction Products, Inc.,* 259 Ind. 581, 290 N.E.2d 53, 55 (Ind.1972); *Hancock Bank v. Gaddy,* 328 So.2d 361, 364 (Miss.1976); *Colgate-Palmolive Co. v. Dorgan,* 225 N.W.2d 278, 282 (N.D.1974).

■ Administrative bodies have only such power as is specifically conferred, or is to be necessarily implied, from the statute creating them. 1 Am.Jur.2d *Administrative Law,* § 70, pp. 866–67 (1962); *Howell School Board v. Hubbartt,* 246 Iowa 1265, 1273–74, 70 N.W.2d 531, 535 (1955).

A good statement of the rule appears in *Fahey v. Cook County Police Dep't. Merit Bd.,* 21 Ill.App.3d 579, 315 N.E.2d 573, 576 (1974), where the court said:

"[The boards and commissions in question] exercise purely statutory powers and must find within the governing statutes warrant for the exercise of any claimed authority. * * * Administrative agencies possess only such authority as is legally conferred by express provision of law or such as, by fair implication and intendment, is incident to and included in the authority expressly conferred for the purpose of carrying out and accomplishing the objectives for which those agencies were created. * * * Thus, it has been said that bodies cannot extend these substantive provisions of a legislative enactment nor create substantive rights through exercise of their rule making powers. * * * "

■ We can find no authorization in either Ch. 601A or in the Cedar Rapids ordinance which can be said to authorize the commission to grant class action relief. We hold the portion of the Commission's order which purported to do so in this case was beyond its jurisdiction, and it is consequently void.

VII. In summary we hold as follows:

1. The provision excluding pregnancy and related disorders from Quaker's Short-Term Disability Plan is a sex-based discrimination in violation of § 69.11 of the Cedar Rapids Human Rights Ordinance.

2. The provision of the Commission's order finding a violation of Ch. 601A.6(1)(a), The Code, is beyond its jurisdiction and void.

3. The provision of the Commission's order attempting to grant class relief is void.

4. The case is remanded for further proceedings including, but not limited to, a determination of the matters referred to in Division V.

5. Costs are assessed against Quaker Oats Co.

REVERSED and REMANDED.

All Justices concur except HARRIS and MASON, JJ., who dissent.

HARRIS, Justice (dissenting).

We should first place in perspective the exact question presented in this appeal. The question is whether a woman must be paid disability benefits if unable to work as a result of pregnancy. It seems to me the majority opinion necessarily presupposes women alone are left to face the economic consequences of pregnancy. I am unsure any such premise is valid, even in this factual situation. It occurs to me the financial burdens resulting from pregnancy are the concern of men as well as women. This is certainly true in the family situation. And our statutes provide at least some tools in the hope of making it true as to fathers of children born out of wedlock. Chapters 675 and 252A, The Code. It is not enough to point out that only women become pregnant. The men involved with them are also left to share the economic consequences.

I cannot entirely share the confidence the majority expresses in the authority of this court to "have the final say in such matters" as this. The majority concedes both the ordinance upon which the opinion rests and § 601A.6(1)(a), The Code, are in all material respects identical with provisions of the Civil Rights Act of 1964. 42 U.S.C. § 2000e, et seq.

The majority also points out *Geduldig v. Aiello,* 417 U.S. 484, 94 S.Ct. 2485, 41 L.Ed.2d 256 (1974) decided provisions such as are involved in the ordinance are not violative of the equal protection clause of the federal constitution. And the majority

points out *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976) holds the identical provisions contained in the Civil Rights Act are not violated by an identical exclusion of pregnancy benefits. Finally the majority concedes the *General Electric* opinion all but withdraws the authority upon which we principally relied for our decision in *Cedar Rapids Community School District v. Parr,* 227 N.W.2d 486 (Iowa 1975). Our power in the matter may not prove to be absolute. The economic stakes in the question are not those of women alone.

In any event it is clear we should now pay as much respectful attention to the federal interpretations as we did in *Cedar Rapids Community School District v. Parr,* supra. The effect in general of federal interpretations of statutes similar to ours was explained in detail in *Hubbard v. State,* 163 N.W.2d 904, 909–912 (Iowa 1969).

I believe the trial court was right in its reliance on *General Electric Co.* I find nothing to show the exclusion of pregnancy disability benefits by Quaker Oats Co. was a pretext designed to effect an invidious discrimination against the members of the female sex.

I would affirm.

MASON, J., joins in this dissent.