285 So.2d 181 (1973)
BRITTON & KOONTZ FIRST NATIONAL BANK
v.
James M. BIGLANE et al.
No. 47476.
Supreme Court of Mississippi.
October 29, 1973.
*182 Brandon, Handy & O'Beirne, Natchez, for appellant.
Zuccaro, Riley, Wood, Pintard & Brown, Natchez, Johnson, Pittman & Pittman, Hattiesburg, Burgin, Gholson, Hicks & Nichols, Columbus, Louis Alford, McComb, for appellees.
INZER, Justice:
This is an appeal by Britton & Koontz First National Bank from a decree of the Chancery Court of Adams County affirming the decision and order of the State Banking Board directing the Comptroller of Banks to issue to appellees, James M. Biglane, John R. Young, Richard M. Durkin, Hugh I. Stahlman, III, Peter Buttross, Carl Passman, and Gerald M. Little, prospective incorporators, a certificate authorizing them to incorporate and organize a new bank in Natchez, Adams County, Mississippi, to be known as the Natchez State Bank & Trust Company, as prayed for in the application filed by said prospective incorporators with the Comptroller as required by law. We affirm.
Appellant contends here, as it did in its appeal to the chancery court, that its constitutional rights have been violated under the Fifth and Fourteenth Amendments of the Constitution of the United States as well as Section 14, Mississippi Constitution (1890), and that the decision of the State Banking Board is not supported by substantial evidence. It is also contended that the decision of the board is based on evidence outside of that developed at the hearing, and the decision is as a matter of law arbitrary and capricious.
After a review of the record, the chancellor found that the proceedings before the State Banking Board were in every way consistent with the essentials of a fair trial, that the proceedings were according to established rules which did not violate fundamental or constitutional rights of the appellant and that there had been no denial of procedural due process. The chancellor further found the findings of the State Banking Board to the effect that public necessity required that the proposed new bank be chartered were supported by substantial evidence and were neither arbitrary nor capricious.
We find no merit in appellant's contention that appellees failed to meet their burden of proof to show that a public necessity existed in Natchez for the establishment of a new bank and that there was no substantial evidence to support the finding of the banking board. In Planters Bank v. Garrott, 239 Miss. 248, 122 So.2d 256 (1960), we discussed the meaning of the word "necessity" as used in this statute. We said:
We have not found, nor has there been called to our attention by counsel, a decision wherein there is a precise definition of "necessity" when used in a statute relative to the issuance of a bank charter. Decisions construing similar provisions in statutes pertaining to other fields of the law are not conclusive or particularly helpful to us in construing the statutory provision under consideration. In our opinion mere convenience is not sufficient to satisfy the statutory requisite of "necessity." But, as stated by the Michigan Court in Moran v. State Banking Commission, [322 Mich. 230, 33 N.W.2d 772] supra, when supplemented by proof of facts and circumstances which, as in the instant case, are persuasive of "necessity", it is proper to take into consideration testimony as to the element of convenience. We agree with the statement made by the Michigan Court in its opinion in the Moran case, that the meaning or import of "necessity", as the word is used in a statute such as we have here, is "a substantial or obvious need justifying the chartering of a *183 new bank in view of the disclosed relevant circumstances." (Emphasis added). (239 Miss. at 279, 280, 122 So.2d at 269).
It would serve no useful purpose to detail the evidence offered by the respective parties in this case. Both parties introduced expert as well as lay testimony to support their contention, and the board in its opinion set out in some detail the testimony. It pointed out that in many instances the evidence was in direct conflict, and in reaching its decision, it was necessary for it to judge the weight and credibility to be given to the evidence. It is not for this Court to substitute its opinion for the opinion of the board, where the board had reached its decision on conflicting evidence and where its conclusions are based upon substantial evidence. After a careful review of the evidence in this case, we find, as did the chancery court, that there was substantial evidence from which the board could find that public necessity, as defined by this Court, requires that the new bank be chartered, and its finding is not arbitrary or capricious.
The only other question for determination is whether the hearing before the board was conducted in such a manner as to violate the right of appellant to due process as required by the Constitution of the United States and the Constitution of the State of Mississippi.
The record reflects that early in the proceedings before the board, appellant made a motion requesting an opportunity to inspect and be furnished a copy of the report of the comptroller made pursuant to Section 5160, Mississippi Code 1942 Annotated (Supp. 1972). The Comptroller stated that it was his practice not to enter his recommendation until he had heard the entire case and that before the close of the evidence, his report would be introduced in evidence and both sides would be given time to inspect and rebut the recommendation by calling other witnesses if they so desired. Before appellant rested its case, it renewed its motion that it be afforded an opportunity to inspect the report of the Comptroller with respect to his finding and recommendation to the State Banking Board. Thereupon, the Comptroller introduced in evidence his report, and counsel for both sides were furnished a copy of the same. The report in essence stated that the Comptroller had investigated or caused to be investigated by his duly appointed examiner all the statutory requirements as set out in Section 5160 to be considered in forming his conclusions and recommendations and that it was his considered judgment that the public necessity required that the proposed bank be chartered and permitted to operate. At this point, appellant made a motion to make available to representatives of appellant's bank for examination the examiner who investigated the situation in Natchez and made a report to the Comptroller. The Comptroller stated that the Attorney General had held that the information obtained in his survey was done for the benefit of the board and was therefore confidential. The board then overruled the motion.
The State Banking Board consists of five members, one of whom is the State Comptroller, who is required by law to be an experienced banker. Three of the other members are outstanding business executives who are not directors in any bank. The other member is an acting senior executive officer of a state chartered bank. The principal function of the board is to pass upon applications for the chartering of new banks. In so doing, it acts as an administrative body and not as an inferior judicial tribunal. We pointed out in First National Bank of Vicksburg v. Martin, 238 So.2d 856 (Miss. 1970), that a certain amount of expertise in the field of banking and a reasonable latitude in exercising sound judgment must be afforded the board in the performance of its specialized duty.
*184 Section 5160 provides in part as follows:
Before any bank may be organized and formed, the prospective incorporators shall give notice to the state comptroller of their desire to engage in banking and apply for a certificate of authority to incorporate, and shall at the time file with the state comptroller a copy of the proposed articles of incorporation, duly sworn to by one of the prospective incorporators. The state comptroller shall promptly give consideration to said application and make an examination of the proposed articles of incorporation to determine if they meet all requirements of law. The state comptroller shall then make an investigation of the number of unit banks and location thereof (excluding branch offices which branch offices shall not be considered as banks) then serving the area in which the proposed new bank is to be located, the ratio of capital funds to total deposits therein, the record of earnings and condition of existing banks and what effect, if any, a new unit bank would have on them, the number of previous bank failures in the area and their liquidation record and banking history generally in the area, the population of the area wherein the proposed bank will be located and relation to number of banks operating therein, reasonable prospects of growth of the area and its financial resources and whether the same are static, progressive or retrogressive, expectation of profitable operation of the proposed new bank, and the morals and business character of the prospective incorporators and such further investigation to determine whether the public necessity requires that the proposed new bank should be chartered and permitted to operate.
When the state comptroller has completed the examination and made his investigation, he shall record his findings in writing and shall draw up his recommendations to the banking board hereinafter provided for. He shall thereupon, in writing, call a meeting of the board to give consideration to his findings, and recommendations, such call to be issued at least ten (10) days in advance of the meeting. The state comptroller shall at the same time give notice of the meeting of the banking board to the prospective incorporators of the proposed new bank and to any and all other interested persons and shall extend to them an invitation to be heard in writing or in person by the banking board.
The banking board, at its meeting, shall consider the findings and recommendations of the state comptroller and shall hear such oral testimony as he may wish to give, and shall also receive information and hear testimony from the prospective organizers of the proposed bank and from any and all other interested persons, bearing upon the public necessity for the organization and operation of the new bank.
It is apparent from the foregoing statute that the legislature intended for the Comptroller to make an investigation in sufficient depth to determine whether in his opinion the bank should be chartered, although there was no opposition to the application. The statute does not contemplate that the reports of those employed by the Comptroller to assist in his investigation should be a part of the evidence in a hearing before the board. We held in Planters Bank v. Garrott, supra, that the findings of the Comptroller must be filed with the board and made available for inspection by the parties as part of the record during the hearing. We did not say at what stage of the proceeding that this should be done. In the case before us, it was made available to appellant before it closed its case, and counsel for the appellant was given an opportunity to offer further evidence after receiving a copy of the report. Appellant did not request additional time in which to study the report or to *185 call other witnesses and closed its case without further evidence. We are unable to see under these circumstances how appellant was prejudiced by this procedure. However, it should be pointed out that the proper procedure requires that a copy of the report and recommendation of the Comptroller be furnished to interested parties at the outset of the hearing so they will have an opportunity to rebut the same by evidence.
Appellant also contends that its constitutional rights were violated because it was refused the right to examine the examiner who made the investigation for the Comptroller. It argues that it must be admitted that the Comptroller relied on the investigation made by the examiner, and it cannot be denied that the board, in turn, relied upon the investigation for the reason the Comptroller stated that the investigation was done for the benefit of the board and is therefore confidential. Thus, appellant concludes that the board did in fact consider and weigh evidence and information which was not developed during the hearing before the board. In support of this contention it cites and relies upon, among other cases, Love v. Mississippi State Board of Veterinary Examiners, 230 Miss. 222, 92 So.2d 463 (1957), and Game and Fish Commission v. Marlar, 206 So.2d 628 (Miss. 1968). In these cases we held that although an administrative agency may act upon information obtained by its own investigation, nevertheless where a hearing is required by law, administrative adjudication must be based upon evidence adduced at the hearing and not upon secret knowledge of the agency. If a report of the investigation is to be considered by the agency, it must be introduced at the hearing and a reasonable opportunity afforded the complaining party to rebut the statements made in the report. In these cases we were dealing with situations where the administrative agency of its own motion made an investigation which it considered in arriving at its decision. Here we are dealing with an independent investigation which the Comptroller was required by the statute to make in order to make a recommendation to the board.
At one time, it was the practice to establish or charter a bank by legislative enactment. This the legislature had a right to do but it saw fit to delegate this function to the State Banking Board. In so doing, it prescribed the administrative procedure to be followed by the board. It saw fit to make the Comptroller a member of this board and place upon him the duty to investigate every application for incorporation of new banks and make his recommendation to the board. This procedure in no way deprives the applicants or those opposing the application of due process, unless, as contended by the appellant, the board did in fact consider the file or report of those employed by the Comptroller to make the investigation.
The only thing in the record that in any way indicates that the board might have considered the report of the examiner who made the investigation for the Comptroller is the statement by the Comptroller that the investigation was made for the benefit of the board. However, the board in its opinion stated that the reason it denied the request of the appellant for the right to examine the report or the examiner who made the investigation for the Comptroller was that the report was prepared for the benefit of the Comptroller as a basis on which his finding and recommendations were made to the banking board as required by statute. We are of the opinion that this statement by the board negates the assumption by the appellant that the board had before it and did in fact consider evidence that was not introduced at the hearing before the board. In arriving at its decision, the board did consider the report of the Comptroller along with other evidence introduced at the hearing. However, the board is not required to and, in fact, does not always follow the *186 recommendation of the Comptroller in reaching its decision. Although the Comptroller is a member of the board, he has only one vote and a majority vote can render the decision although it is against his recommendation.
After a careful consideration of the record and all the contentions made by the appellant, we are in accord with the finding of the chancery court that the appellant was afforded a full and fair hearing before the banking board in which none of its constitutional rights were violated. We are also in accord with the finding of the chancery court that the order of the board was supported by substantial evidence and was neither arbitrary nor capricious. Therefore, this case must be and is affirmed.
Affirmed.
RODGERS, P.J., and ROBERTSON, WALKER and BROOM, JJ., concur.