421 So.2d 1225 (1982)
Robert EIDT
v.
CITY OF NATCHEZ.
No. 53487.
Supreme Court of Mississippi.
November 10, 1982.
*1227 Johnson & Johnson, Forrest A. Johnson, Jr., Natchez, for appellant.
Walter Brown, Joseph S. Zuccaro, Natchez, for appellee.
Before WALKER, P.J., BROOM and HAWKINS, JJ.
BROOM, Justice, for the Court:
Back pay due Robert Eidt for the time he was improperly discharged as a fireman for the City of Natchez is featured by this case appealed from the Circuit Court of Adams County, the Honorable Edwin O. Benoist, Jr., circuit judge. Previously on Eidt's first appeal, our decision was that his discharge was improper and that he should be reinstated with back pay less what he "has or reasonably should have earned" while discharged. Eidt v. City of Natchez, 382 So.2d 1093 (Miss. 1980). Upon remand, based upon our decision, the Natchez Civil Service Commission heard the matter and found that had Eidt not been terminated as a fireman, his earnings would have been $26,452.84. The commission further found that during the period of his wrongful discharge he reasonably should have earned $13,100.00. Thus the commission ordered $13,100 be deducted from the $26,452.84, and awarded him the difference between the two figures: $13,352.84. Eidt appealed to the circuit court, which court affirmed the award upon condition of a $3,000 additur, making a total judgment of $16,352.84. Eidt appeals here the second time, and we reverse as to the amount of Eidt's recovery.
Arguments asserted by Eidt may be summarized as follows: (1) the circuit court erred in ordering remand of the case to the Natchez Civil Service Commission in the event the additur was not accepted, (2) the commission erred in making a determination of the amount of income that Eidt had or reasonably should have earned from March 18, 1978, through October 11, 1978, (3) the commission erred in taking judicial notice of and accepting as evidence certain "factual data" not properly in the record, and (4) the commission's findings were not supported by substantial evidence but were arbitrary, capricious and contrary to all the evidence presented at the hearing.
Natchez cross-appeals and argues that the circuit court erroneously ordered the $3,000 additur.
On the first appeal we ordered the case remanded and subsequently the following events have transpired: Eidt continued attending college (nights) as he previously did while a fireman with consent of his fire chief.
On May 19, 1980, Eidt's attorney wrote the Natchez Civil Service Commission requesting Eidt's reinstatement and payment of back wages owed by the City in accordance with our prior decision, Eidt v. City of Natchez, supra. Approximately one month later, on June 12, 1980, the Commission requested that all of Eidt's pay records be forwarded to the city attorney's possession. On July 8, 1980, the city notified Eidt to return to work at 6 o'clock the following morning and placed him upon six months' probation. The next day, following a vigorous complaint by Eidt's attorney with regard to the lack of notice and the unwarranted six months' probation, the city modified their return-to-work order. On July 17, the city attorney requested that Eidt, through his attorney, submit a proposal with regard to the subject of back wages owed Eidt by the city. On August 18, 1980, Eidt complied with this request and furnished supporting documentation (income tax returns).
After waiting another month, Eidt wrote a letter to the Civil Service Commission demanding a hearing, and noting that approximately five months had elapsed since this Court's April 30, 1980 mandate. On September 23, counsel for the commission notified Eidt's counsel that a hearing would be held September 29, 1980. This notice described the purpose and function of the hearing:
At that time you were asked to attend, to have your client present and to present evidence or testimony as you see fit.

It will be the function of the Commission at this hearing to determine how much income Eidt had or reasonably *1228 should have earned since his discharge on April 18, 1978 until his reinstatement on July 9, 1980, which amount, shall be deducted from the back pay which he would have earned from the City of Natchez during the same period. (Emphasis added).
At the hearing, the only witness for the commission was city clerk Martha Brown. She testified that for the period between March 18, 1978, and June 30, 1980, Eidt's wages from the Natchez Fire Department would have totaled $26,188.91. No other witnesses or evidence were adduced by the commission.
Eidt presented testimony of three witnesses. Mr. William C. McGehee, Eidt's attorney during the original litigation on the subject of his wrongful discharge, testified that Eidt had asked him for assistance in finding work during the period of time involved. McGehee testified that he had indeed tried to help Eidt through various contacts in the business community, but had no success. According to McGehee, adverse publicity on the subject of Eidt's discharge had placed Eidt in a bad light for employment purposes.
Eidt himself took the stand next and introduced his tax records for the years in question showing a total reportable income of $3,999. He testified as to his efforts to find employment during the period of time and indicated a notable lack of success. Eidt further testified that the only way he and his wife had been able to survive was by borrowing money from his parents and the bank.
Eidt's wife then took the stand and confirmed her husband's efforts at finding work. After Mrs. Eidt's testimony, Eidt rested his case and the hearings were adjourned. On October 14, 1980, the commission issued an order finding:
(1) Eidt's actual earnings for the period of time in question totaled $3,999.50 (per income tax returns); (2) Eidt had not checked with the State Employment office, but had put in applications at various places of employment and had checked the want ads in the newspaper; (3) Eidt was of excellent health and above average intelligence; (4) Adams County, Mississippi, is a highly industrialized urban county in which average wage data secured from the Mississippi Employment Security Commission showed the following:

 AVERAGE WAGES PAID 1978
 Annual Weekly
 Adams County $11,040 $212
 Statewide $ 9,320 $179
 AVERAGE WAGES PAID 1979
 Annual Weekly
 Adams County $12,160 $233
 Statewide $10,200 $196

(5) In Adams County, Mississippi unemployment for white males for the year 1978 was 4.8%, and for the year 1979 was 3.9%; (6) Salary Eidt would have earned with the Natchez Fire Department totaled $26,452.84; (7) The amounts Eidt should have earned during the period of his wrongful discharge were as follows: (a) from March 19, 1978 through December 31, 1978  $60 a week; (b) from January 1, 1979 through December 31, 1979  $140 a week; (c) from January 1, 1980 through May 27, 1980  $160 a week; Total Robert Eidt should have earned $13,100 during the period of time of his wrongful discharge from the Natchez Fire Department.
The commission's order concluded:
The findings made herein are based on the evidence adduced at the hearing ... at which time Mr. Eidt and his counsel testified and offered evidence, upon the factual data obtained from the Mississippi Employment Security Commission, and upon the facts and other data weighed by the Commission as to the age, race, educational level and general background of Robert Eidt and of the job opportunities, wage scale and business climate in Adams County, Mississippi prevailing during the period of time in question.
On October 24, 1980, Eidt notified the commission of his intentions to appeal its decision to the circuit court, and requested transmission of the record of the hearings *1229 before the commission. On February 10, 1981, Eidt filed a petition for a writ of mandamus to compel the certification and filing of the requested transcript with the circuit court.[1] On March 2, 1981, the transcript of the proceedings before the commission was supplied to the circuit court.
On August 14, 1981, the circuit court issued an order affirming the decision of the Natchez Civil Service Commission upon the condition of an additur of $3,000. The court indicated that in the event the additur was not accepted, the cause was to be remanded for hearings before the Natchez Civil Service Commission "for further deliberation and determination and for the specific purpose of the formal admission of evidence concerning official statistics of the Mississippi State Employment Service and to allow the appellant to make such cross-examination as he deems appropriate with respect thereto."
DID THE COMMISSION ERR IN CONSIDERING BY JUDICIAL NOTICE DATA NOT INTRODUCED INTO EVIDENCE AT THE HEARING? In essence, Eidt contends that the findings of the commission should have been based solely upon evidence adduced at the September 29, 1980, evidentiary hearing. He asserts that the commission's findings of fact as to the average wage and the level of unemployment in Adams County have no basis whatsoever in the record, and accordingly he contends that the findings of the commission are arbitrary, capricious and unsupported by substantial evidence.
Natchez responds to this charge by contending that the statistical information as to unemployment levels and average weekly wages were subjects which were appropriate for judicial notice by the commission. Because such facts are capable of being judicially noticed, Natchez asserts that such facts were properly included in the formulation of the basis for the commission's determination of the amount of money that Robert Eidt earned or should have earned.
In weighing the respective validity of each of these positions, we briefly review the nature and function of "judicial notice". In his revision of Wigmore's treatise on Evidence, Professor Chadbourn offers the following description of what is meant by the term:
There are various senses in which the term judicial notice is used. In the orthodox sense noted it signifies that there are certain facta probanda (§ 2 supra) or propositions in a party's case, as to which he will not be required to offer evidence; these will be taken for true by the tribunal without the need of evidence, either because they are notoriously known or capable of unquestionable demonstration (§ 2571 infra). This general view of judicial notice is simple, natural enough, and traditional.
9 Wigmore, Evidence § 2565 (Chadbourn rev. 1981), at 694.
In essence judicial notice is a "judicial shortcut, doing away, in the case of evidence, with the formal necessity for evidence, there being no real necessity for it." 31 C.J.S. Evidence, § 6, at 823. This view of judicial notice has found frequent application in the courts of this state. Armstrong v. Jones, 198 Miss. 627, 22 So.2d 7 (1945), states that judicial notice takes the place of evidence and is of equal force with evidence formally presented at the trial. Basically when a court takes judicial notice of a fact, that notice dispenses with the necessity of adducing proof as to matters of common knowledge. Gulf, M & N R. Co. v. Weldy, 193 Miss. 59, 8 So.2d 249 (1942). In view of this preemptive nature of judicial *1230 notice as dispensing with the necessity for the production of evidence (generally thought to be the main purpose of any trial or hearing), this Court has recognized a responsibility, which is coextensive with this power, of exercising judicial notice with extreme caution:
But the courts are in general agreement that the power to take judicial notice is to be exercised with caution and with particular care to see to it that the fact to be noticed comes safely within the allowable limitations, and that doubts upon the subject must be resolved in the negative. 23 C.J., p. 173.
Luckett v. La. Oil Corp., 171 Miss. 570, 158 So. 199 (1934), at 575.
Also to be noted are the types of facts susceptible of being "judicially noticed." Turning again to Professor Chadbourn:
2. Specific Kinds of Facts Noticed
§ 2571. Scope of principle. The scope of facts that may be noticed includes:
(1) Matters which are actually so notorious to all that the production of evidence would be unnecessary;
(2) Matters which the judicial function supposes the judge to be acquainted with, in theory at least;
(3) Sundry matters not included under either of these heads; they are subject for the most part to the consideration that though they are neither actually notorious nor bound to be judicially known, yet they would be capable of such instant and unquestionable demonstration, if desired, that no party would think of imposing a falsity on the tribunal in the face of an intelligent adversary.
It is hardly feasible, however, in enumerating those matters to follow strictly this or any other classification.
9 Wigmore, supra, § 2571.
It is this third category which has seen particularly frequent application in Mississippi courts. McGill v. City of Laurel, 252 Miss. 740, 173 So.2d 892 (1965), recognized that judicial notice was properly taken of "that which is commonly known." Id., at 764, 173 So.2d 892. This category of the "commonly known" has been held to include statistical facts of reliable origin, such as a federal or public census. Dow v. Town of D'Lo, 169 Miss. 240, 152 So. 474 (1934); Brown v. Reeves, 129 Miss. 755, 92 So. 825 (1922).
Judicial notice has been employed in the courts of this state with considerable liberality as regards the type of facts which may be judicially noticed. Atlantic Life Insurance Company v. Klotz, 182 Miss. 243, 181 So. 519 (1938). In the instant case, Natchez contends that the unemployment figures and average wage data obtained from the Mississippi State Employment Service, an arm of the Mississippi Employment Security Commission, represented facts of such common knowledge, or were so readily susceptible of rapid verification and unquestioned authenticity as to be appropriate for judicial notice. Thus it would seem reasonable that the statistics themselves, as a type of information, normally would be appropriate for judicial notice. However, we have concluded that the procedural aspects of the method by which the Civil Service Commission sought to take "judicial notice" of the data in question constitutes reversible error.
Armstrong v. Jones, supra, held that the judicial shortcut of judicial notice must give way at the point at which such a "shortcut" impinges upon the procedural safeguards inherent in our judicial process. "The right of a court to act upon that which is in point of fact known to it must be subordinate to those requirements of form and orderly communication which regulate the mode of bringing controversies into court and of stating and conducting them." Id., at 639, 22 So.2d 7, quoting 20 Am.Jur. § 17, at 48.
The two devices which form the irreducible minimum necessary to comport with our traditional notions of due process are (1) meaningful notice, and (2) a hearing before a neutral tribunal where one may present his side in a controversy. Here the commission's actions in taking judicial notice of such facts by such means as to effectively preclude any response from Eidt, clearly impinges upon both these requirements of due process and fairness. *1231 Eidt had no meaningful notice that the data was to be considered, and was precluded from questioning the accuracy of the board's transcription of the data. He was not allowed to question the relevance of this particular data to the issue at hand. He was cut off from putting on evidence to show that his situation sufficiently differed from the "average" figures so as to render them inapplicable. He was precluded from knowing the criteria which were being employed in the determination of how much he should have earned during the period of his wrongful discharge.
Fairness and due process require that whenever a court at the trial level is contemplating taking judicial notice of a particular fact or facts as a basis for calculations and fact findings, notice must be afforded to the party or parties who will be affected by the taking of such notice. Such a position finds compelling support in both the federal rules of evidence and in the majority of our sister states. See Federal Rule of Evidence 201(e); See also, Arizona Rule of Evidence 201(e) 1977); Ark.Stat. Ann. § 28-1001, Rule 201(e) (1979); Colorado Rule of Evidence 201(e) (1980); Maine Rule of Evidence 201(e) (1976) (see advisor's note); Michigan Rule of Evidence 201(d) (1978).
Affording a party the opportunity to be heard whenever a tribunal is contemplating taking judicial notice of a fact is of particular importance in the realm of administrative proceedings. Britton and Koontz First National Bank v. Biglane, 285 So.2d 181 (Miss. 1973); Game and Fish Commission of the State of Mississippi v. Marlar, 206 So.2d 628 (Miss. 1968). This can be seen in the broad discretion which administrative agencies have in the areas of both factfinding and of the development of criteria to be used in making administrative decisions. The importance of the opportunity to be heard with respect to judicial notice is emphasized in the Federal Administrative Procedures Act, 5 U.S.C. § 556(e) (1976). Likewise, the Revised Model State Administrative Procedures Act (1961), 14 U.L.P.A. § 10(4) (1981) states:
Notice may be taken of judicially cognizable facts. In addition, notice may be taken of generally recognized technical or scientific facts within the agency's specialized knowledge. Parties shall be notified either before or during the hearing or by reference in preliminary reports or otherwise, of the material noticed including any staff memoranda or data, and they shall be afforded an opportunity to contest the material so noticed.
This basic concept of notice and an opportunity to be heard with regard to the use of judicial notice in administrative proceedings is consistent with the fundamental notion, long recognized by this Court, that the only evidence which will be considered by this Court on appeal is evidence which has a substantial basis in the record. Recognizing the peculiar expertise of administrative agencies when acting within their proper sphere, we have consistently refused to overturn any administrative agency's finding based upon substantial evidence. Mississippi State Tax Commission v. Package Store, Inc., 208 So.2d 46 (Miss. 1968); Central Electric Power Association v. Hicks, 236 Miss. 378, 110 So.2d 351 (1959); Cobb Brothers Construction Company v. Gulf, M. & O.R.R. Co., 213 Miss. 706, 57 So.2d 570 (1952); Mississippi Unemployment Compensation Commission v. Avent, 192 Miss. 85, 4 So.2d 296 (1941).
Accordingly, the scope of judicial review of the findings and actions of an administrative agency is limited to the four aspects set forth in Mississippi State Tax Commission v. Mississippi-Alabama State Fair, 222 So.2d 664 (Miss. 1969):
The appeal is a limited one, however, since the courts cannot enter the field of the administrative agency. The court will entertain the appeal to determine whether or not the order of the administrative agency (1) was supported by substantial evidence, (2) was arbitrary or capricious, (3) was beyond the power of the administrative agency to make, or (4) violated some statutory or constitutional *1232 right of the complaining party. This rule has been thoroughly settled in this state.
Id., at 665.
We have imposed one pole-star requirement upon administrative agencies when hearing a "contested case" [See Miss. Code Ann. § 25-43-3(b) (Supp. 1981)]: any decision of any administrative board or agency must be based upon substantial evidence appearing in the record.
In Love v. Miss. St. Bd. of Veterinary Examiners, 230 Miss. 222, 92 So.2d 463 (1957), the Board of Veterinary Examiners in considering an application for a veterinary license heard testimony from the applicant, four witnesses, and the applicant's attorney, supported by additional affidavits. No evidence was offered at the hearing in opposition to the granting of such license. After the board refused to grant the applicant his license, the chancellor set aside the board's order denying the applicant's license. This Court affirmed the chancellor's position that he could consider only evidence legally before the board. We stated that the chancellor correctly rejected a committee report
which contained statements and conclusions decidedly unfavorable to the granting of a license to the appellant. The report was filed on June 21, 1955, the day on which the Board entered its final order rejecting the appellant's application. It was not shown that a copy of the report had been delivered or mailed to the appellant or his attorney prior to the filing of the report; and it was not shown that the report was presented to the Board in open session, or that the appellant was afforded an opportunity to examine the report or to offer any rebuttal evidence to refute the statements contained in the report.
... .
The right to hearing in a case of this kind embraces not only the right to present evidence but also a reasonable opportunity to know the claims of the opposing party and to meet them.
... But the evidence obtained by the committee and the committee's report should have been filed with the Board's secretary, and should have been presented to the Board in open session, during the hearing on the appellant's application, and a reasonable opportunity should have been allowed to the appellant to examine the report and the affidavits and other exhibits filed with the report, and offer rebuttal evidence to contradict the statements contained in the report and the exhibits, if he desired to do so.
Id., at 230-31, 92 So.2d 463.
See also, State Board of Psychological Examiners v. Coxe, 355 So.2d 669 (Miss. 1978); Thornton v. Wayne County Election Commission, 272 So.2d 298 (Miss. 1973); Talley v. Board of Supervisors, 323 So.2d 547 (Miss. 1975).
The City contends that in the case of Britton and Koontz First National Bank v. Biglane, 285 So.2d 181 (Miss. 1973), this Court held that the only prohibition against the use of evidence not adduced at a hearing is a prohibition against the use of "secret knowledge" of an agency. Hence it is contended that publicly available information does not fall within this category.
In Britton, the comptroller's report to the State Banking Board that a proposed bank met the "public necessity" requirement was challenged since the comptroller's investigators were not make available for examination. Britton is distinguishable from the instant case in that the real "evidence" in question there was the comptroller's "expert" opinion. That opinion, required by statute, was to be based on specific statutorily specified criteria. The appellant was offered the opportunity to introduce any evidence with respect to these criteria and declined. In Britton, the evidence being used in reaching a decision (the comptroller's opinion and the criteria upon which it was based) was introduced at trial and the opportunity was afforded to offer evidence to the contrary. In the instant situation, no such opportunity was afforded.
In the instant case, there was no notice or any indication of any evidence to be considered by the Natchez Civil Service Commission *1233 other than that which was adduced at the hearing. Those facts adduced at the hearing are as follows: (1) Eidt's salary with the Natchez Fire Department would have been approximately $26,000; (2) Eidt actually earned approximately $4,000; (3) Eidt made efforts at seeking employment; (4) Eidt did not go to the State Employment Office in search of employment.
This evidence is the only evidence which was adduced at the hearing, and such, is undisputed. Long recognized by this Court is the basic principle that undisputed evidence in the record is taken as true on appeal. Lucedale Veneer Co. v. Rogers, 211 Miss. 613, 48 So.2d 148 (1950), on sugg. of error 53 So.2d 69 (1951). The statistical data placed in the record after the hearing concluded was erroneously considered as basis of the commission's order appealed from. Even if the statistical data were properly in the record, Eidt's proof removed him from the "average" situation or "norm" of Adams County as asserted by the Commission.
Eidt also argues that the circuit court erred in its order modifying the civil service commission's decision by entry of an additur or remand to the commission. In essence, Eidt argues that it was the circuit court judge's responsibility to "affirm or reverse the judgment. If the judgment be reversed the circuit court shall render such judgment as the board or municipal authorities ought to have rendered ...", pursuant to Miss. Code Ann. § 11-51-75 (1972). In so claiming, Eidt contends that the additur statute, Miss. Code Ann. § 11-1-55 (Supp. 1982) is inapplicable to an appeal from an administrative agency. By cross-appeal, Natchez also contends that the additur was error. We do not hold that an additur cannot be ordered in any or all cases appealed from an administrative tribunal, but § 11-51-75, supra, mandates the judge hearing the appeal to "affirm or reverse". The additur cannot be upheld here because, absent the inadmissible judicially noticed statistical data erroneously considered by the commission, Eidt's evidence as to his earnings and what he reasonably should have earned is not substantially contradicted. Thus the circuit court pursuant to § 11-51-75, supra, should have reversed the civil service commission's order and rendered Eidt a judgment for his back pay due him less the total of what, according to relevant and properly adduced evidence, he earned and reasonably should have earned after he was terminated. Not only is the record devoid of substantial evidence supportive of the commission's finding that Eidt reasonably should have earned $13,100.00, the finding is lacking of any evidentiary support. Therefore, we must reverse the decision of the Adams County Circuit Court and render Eidt a judgment here for $26,452.84, the amount of the wages (backpay) he would have been due as a member of the Natchez Fire Department, less $3,999.50, the amount, according to properly admitted evidence, of actual earnings and what he reasonably should have earned as shown by the evidence during the period. Accordingly, judgment will be rendered here for the net sum of $22,453.34.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.
PATTERSON, C.J., SUGG and WALKER, P. JJ., and ROY NOBLE LEE, HAWKINS, BOWLING, DAN M. LEE and PRATHER, JJ., concur.
NOTES
[1] It is interesting to note that the authority relied upon in the writ of mandamus to compel the transmission of the transcript is Miss. Code Ann. § 21-31-23, which provides that the commission "shall, within ten days, after the filing of such notice, make, certify and file such transcript with such court." On appeal to this Court, Eidt steadfastly maintains in his brief that the previously cited section of the Miss. Code is applicable only in the proceedings directly involving wrongful discharge. Eidt maintains that the instant case is not controlled by the aforementioned section since it is an action solely for the determination of wages owed rather than for wrongful discharge. See also, Miss. Code Ann. § 11-51-75 (1972), which Eidt is presently asserting as the authority for his appeal in the instant case.