# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 92-CC-00954-SCT

*MISSISSIPPI DEPARTMENT OF CORRECTIONS*

*v.*

*GEORGE MCCLEE AND THE MISSISSIPPI EMPLOYEE APPEALS BOARD*

| | |
|---|---|
| DATE OF JUDGMENT: | 8/27/92 |
| TRIAL JUDGE: | HON. JAMES E. GRAVES |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES M. NORRIS |
| ATTORNEY FOR APPELLEES: | RICHARD A. OAKES |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | REVERSED AND REMANDED - 6/27/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 7/18/96 |

EN BANC.

BANKS, JUSTICE, FOR THE COURT:

¶1. Here we are required to resolve the, perhaps contradictory, requirements of our state personnel disciplinary statutes. The Mississippi Department of Corrections [hereinafter DOC] contends that those statutes were violated by a decision which appears to have been bottomed on an allocation of the burden of proof to it rather than the complaining employee. The employee responds that the decision was simply responsive to a lack of evidence showing the reason given for discharge to be "true." That is, that he carried his statutory burden of showing the negative, that the charges are not true, by the failure of proof of the DOC. We remand to the Employee Appeals Board for reconsideration and application of the correct standard.

I.

¶2. George McClee, an MDOC officer at the state penitentiary in Parchman, Mississippi, worked the 12:00 a.m. to 8:00 a.m. shift in an inmate unit. Early on the morning of July 31, 1989, Officer Ward telephoned McClee from the back tower and indicated that a prison food service truck was approaching his unit. McClee hung up the phone and waited for approximately ten minutes for authorization from the front tower to open the gates. He testified that the phone never rang. Because his assigned unit was very warm that morning, he walked away from his desk, which was positioned on a concrete platform, and sat in a chair placed on the floor in front of a large fan. His vision was

somewhat obstructed by a fellow officer sitting at the platform desk, but McClee claimed he could see the prisoners if they awoke and stood up.

¶3. Officer Williams was the guard in the front tower responsible for notifying McClee of the truck's arrival. Williams said no one answered the phone in McClee's unit when the truck arrived. The driver of the food service truck waited for a few minutes outside the gates before blowing the horn. The guard in a neighboring tower 2/5 mile away even called to inquire about the noise. McClee failed to hear the food service truck outside the gate, and he later explained to Ward that he never received a call from Williams.

¶4. Sgt. Gene Booker, Lt. Howell, and Sgt. Collier walked to McClee's unit after Williams failed to get an answer on the phone. Upon entering the unit, they observed McClee who appeared to be asleep in a chair at the entrance of the dining hall, and another officer who appeared asleep at the desk. Howell threw a night stick across the floor from about ten feet away and struck the legs of McClee's chair. McClee then jumped up from his chair.

¶5. Collier testified that McClee was asleep when they entered the unit. Collier had verbally instructed McClee to remain on the platform at the desk when not engaged in other duties, but there was conflicting testimony as to whether both officers in the unit were required to remain seated at the platform desk. Collier filed a personnel report against McClee, but the records for that day failed to reflect this entire incident. McClee had been previously disciplined for sleeping in the front tower.

¶6. McClee testified that he jumped to attention at 5:20 a.m. as soon as he observed the officers enter the building. This was the same moment he heard a night stick strike the floor. He said he might not have heard the phone ring because he had been sitting under the fan. There were also records showing that McClee had previously reported phone problems to the department. He maintained that he was not asleep when the other officers arrived.

¶7. McClee was notified that his employment with the Mississippi Department of Corrections would terminate on October 21, 1989, for sleeping on duty. On November 1, 1989, McClee filed a notice of appeal with the Mississippi Employee Appeals Board (MEAB) contesting the DOC's decision to terminate his employment. On December 19, 1989, the appeals referee with the MEAB entered an opinion affirming the DOC's decision to terminate him on the basis that he had been found at work in such a relaxed state that he was unable to carry out his duties.

¶8. The MEAB entered an order on May 14, 1990, sustaining the DOC's decision to terminate McClee for being inattentive to his duties. In an En Banc review of this decision, the MEAB found that the DOC's actions were too harsh and that he should be reinstated with back pay through the last day of his fifteen day suspension. The DOC sought review of the board's decision in the Hinds County Circuit Court. The circuit court subsequently granted writ of certiorari and supersedeas. The circuit court entered an opinion and order on August 27, 1992, affirming the MEAB on the basis that the decision to reinstate McClee was supported by substantial evidence. The DOC filed its notice of appeal with this Court on September 11, 1992.

## II.

¶9. Rule 17(B) and (C) of the Administrative Rules of the Mississippi Employee Appeals Board

provides:

> B. The appealing party shall have the burden of proving that an alleged grievable action was taken, was in error and merits the relief requested.

> C. An appealing party, who is a permanent state service employee, and who has by written notice been dismissed or otherwise adversely affected as to his or her compensation or employment status shall be required to furnish evidence that the reasons stated in the notice of such action are not true or are not sufficient grounds for the action taken.

¶10. Miss Code Ann. § 25-9-132 (2) and (3) (1991) provides the following with respect to the lower court's scope of review:

> (2) The scope of review of the circuit court in such cases shall be limited to a review of the record made before the employee appeals board or hearing officer to determine if the action of the employee appeals board is unlawful for the reason that it was:

> (a) Not supported by any substantial evidence;

> (b) Arbitrary or capricious; or

> (c) In violation of some statutory or constitutional right of the employee.

> (3) No relief shall be granted based upon the court's finding of harmless error by the board in complying with the procedural requirements of sections 25-9-127 through 25-9-129; provided, however, in the event that there is a finding of prejudicial error in the proceedings, the cause may be remanded for a rehearing consistent with the findings of the court.

¶11. McClee concedes that the burden of proof rested on him to show that the charge set forth in the notice of termination was not true. The charge against McClee was as follows:

> On July 31, 1989, at approximately 0520 hours, Unit 24 Control was notified that a Valley Food truck was at the Front Gate of Unit 22 trying to make a delivery and there was no answer on both telephone lines within Unit 22. At approximately 0530 hours, Lt. Henry Howell, Sgt. Booker and St. Collier departed Unit 24 in route to Unit 22. Upon their arrival at Unit 22 at approximately 0534 hours, they entered the northeast exit door. As they entered the unit, the hall area was very dark. You were found in the dining Hall area of Unit 22 sitting in a chair asleep. Lt. Howell took his nightstick and threw it at the bottom part of the chair you were sitting in. When the nightstick hit the bottom part of the chair, you jumped up. A security check of the area (kitchen and Unit) was conducted to ensure no inmates were out of their housing zones.

> Acts of conduct occurring on or off the job which are plainly related to job performance or are of such nature that to continue the employee in the assigned position could constitute negligence in regard to the Agency's duties to the public or to other state employees is a violation of Subparagraph #11 of Appendix III (Third Group Offense) as outlined in the State Personnel Board Manual of Policies, Rules and Regulations updated 1 May 1986.

¶12. The Mississippi Employee Appeals Board (MEAB) entered the following opinion after a termination hearing was conducted:

> The Mississippi Department of Corrections has a long-standing policy that anyone found sleeping on duty the second time within a reasonable period would be terminated from their employment. Proof showed that the Appellant was suspended for five days on July 20, 1987, for sleeping on duty and that he had 7 other reprimands within the past four and one-half years. Although it **was not proved to this hearing officer that McClee was actually asleep on the job, it is obvious that he was away from his duty station and was inattentive to his duties**. This, coupled with his long list of past offenses is sufficient to warrant termination. Therefore, the action of the Mississippi Department of Corrections in terminating the employment of George McClee is hereby sustained.

¶13. The MEAB subsequently entered an En Banc Order finding that the DOC's actions were too harsh and not supported by the facts **"in that the [MDOC] failed to prove the Appellant was actually asleep on the job,"** but that "Appellant was certainly away from his duty station and was inattentive to his duties." McClee was reinstated with back pay through the last day of his fifteen day suspension. The DOC contends that the MEAB En Banc Order demonstrated that the burden of proof was erroneously placed on the DOC to show that McClee was actually asleep.

III.

¶14. The statute and administrative regulations clearly place the burden of persuasion on the aggrieved employee to demonstrate that the reasons given are not true. Rule 17, Administrative Rules of the Mississippi Employee Appeals Board; Rules Miss. Code Ann. § 25-9-127 (1972). The opinions of the hearing officer and the Employee Appeals Board [hereinafter EAB] en banc, just as clearly recite a failure of the DOC to demonstrate that the reason was true. This is not mere semantics. Under our scheme, in a nutshell, ties go to the appointing authority. That is, unless the employee carries the burden of persuasion that the alleged conduct did not occur, the employee has no right to have the employment decision overturned. *Mississippi Employment Security Commission v. Collins*, 629 So. 2d 576, 580 (Miss. 1993); Miss. Code Ann. § 25-9-127.

¶15. The allegation in question is that McClee was asleep on duty. McClee denies that he was asleep. Two of his superiors testified that in their opinion he was asleep and that he acted in no manner inconsistent with that of a person being asleep. He sat with his head down in a slumped manner. He made no movement or other sign of awareness of their presence. He moved only when a night stick was thrown striking his chair. When he did get up in response to the stick he appeared groggy and somewhat disoriented. While the witnesses at one point or another said that they could not "swear that he was asleep" they indicated quite clearly that they could "swear" that in their "opinion he was asleep" from observing, in one case as much as twenty feet and another as close as five feet away. Additionally, McClee gave disparate accounts as to why he failed to answer when called, in one instance indicating that he was talking on the phone and in another claiming that the phone did not work and therefore he was unaware of attempts to reach the duty station by phone.

¶16. To be sure, there was evidence that the phone did not work and the witnesses did express some slight equivocation on whether McClee was in fact asleep. That is to say only that upon a correct allocation of the burden of proof, the decision of the EAB could, perhaps, pass muster.

¶17. What the hearing officer said was that he was not convinced that McClee was asleep. That is not the issue. The hearing officer must be convinced that McClee was not asleep in order to overturn the action of the appointing authority. The hearing officer went on to uphold the discharge on grounds not specifically asserted in the charge. The EAB accepted the hearing officer's findings and modified the punishment. Neither the hearing officer nor the EAB is shown to have properly allocated the burden of proof.

¶18. We are therefore compelled to reverse the order of the EAB and remand the matter to it for a decision based on the proper allocation of the burden of proof.

¶19. **REVERSED AND REMANDED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE OPINION.**


**McRAE, JUSTICE, DISSENTING:**

¶20. Because McClee met his burden of proof to demonstrate he was not sleeping on duty, I must respectfully dissent. McClee merely established his case by demonstrating on cross-examination that the officers who entered his unit that morning were not sure if he was actually asleep. When taken out of context, the EAB Order might be interpreted as having placed the burden of proof on the DOC. However, in every finding of fact, including the findings of the appeals referee who upheld the termination of McClee, it was determined that the proof was insufficient to show McClee was asleep on the job because the officers admitted on cross-examination they were not positive of this fact.

¶21. The majority fails to realize that the only possible way McClee could prove his case was to reveal the weakness of the DOC's evidence on cross-examination. It would have been convenient if McClee had direct evidence from an instrument which had measured whether he was actually sleeping at the time the guards entered the building, but McClee proceeded with his case and met his burden of proof in the only possible way that he could. Notwithstanding the fact that McClee adamantly denied the charges during his testimony, the majority essentially holds that a litigant may not meet his "burden of proof" through impeachment of an opponent's evidence.

¶22. Miss. Code Ann. § 25-9-127 (1991) states, "[n]o employee . . . may be dismissed or otherwise adversely affected as to compensation or employment status except for inefficiency or other good cause." Because McClee proved that the DOC could not establish he was sleeping on duty, they failed to show inefficiency or good cause for termination. Consequently, the EAB en banc decision to reinstate McClee, and the lower court's affirmance of this decision should be upheld on appeal.

¶23. The DOC is correct in that absence from one's duty station and inattentiveness would be sufficient grounds for termination. However, reviewing the charge as stated in the majority opinion, it is apparent that sleeping on duty was the only alleged conduct in the notice of dismissal. The DOC failed to charge McClee with any other behavior that would have warranted dismissal or established a case of inattentiveness.

¶24. The DOC employee handbook sets forth the following requirements for dismissal:

(a) At least ten (10) working days prior to any suspension without pay, demotion, or dismissal of a permanent service employee, the employee **shall be given written notice of the reasons** for such action and shall be given an opportunity for a conference or to respond in writing to any such action.

(b) The written notice presented to any employee prior to a conference **shall list all of the reasons** for the Departments consideration of adverse action and the written notice of the Commissioner's final decision to take adverse action shall restate all the reasons for the action. **The reasons listed in these notices shall be specific. The reasons listed in these notices shall be the only reasons to be addressed throughout the appeals process**. (emphasis added)

¶25. Administrative Rule 15(d) of the EAB, which concerns an employee's due process rights, states:

D. In the appeal of an action adversely affecting compensation or employment status, the presiding Hearing Officer **shall hear or receive evidence on only those reasons and allegations contained in the responding agency's final notice** to the employee of such action. (emphasis added)

¶26. Since sleeping on duty was the only alleged conduct listed as grounds for termination, McClee was required under Administrative Rule 15(d) and the DOC employee handbook to defend only this single charge. He successfully defended this charge, and there is substantial evidence in the record to support this conclusion. *See **Eidt v. City of Natchez**, 421 So. 2d 1225 (Miss. 1982) (decisions of administrative board must be based upon substantial evidence appearing in record). The Board's conclusion that McClee "was certainly away from his duty station and inattentive to his duties," is irrelevant where unsupported by the alleged conduct in the termination notice.

¶**27.** Rule 20 of the Administrative Rules of the EAB states:

A. The Employee Appeals Board may reinstate a prevailing party into employment with his or her responding agency and restore all his or her employee rights and benefits including back pay . . . .

B. The Employee Appeals Board may modify an action of a responding agency but may not increase the severity of such action on the appealing party. If the responding agency has acted in accordance with the published policies, rules and regulations of the State Personnel Board, and if the personnel action taken by the responding agency is allowed under said policies, rules and regulations, the Employee Appeals Board shall not alter the action taken by the agency.

¶28. By terminating McClee without proper notice, the DOC violated its own policies, rules and regulations set forth in its employee handbook. Since the DOC violated its own policies concerning notice, Administrative Rule 20 permitted the EAB to alter the decision of the DOC and reinstate McClee with back pay. Accordingly, I must dissent from the majority's reversal of the decision by the lower court and EAB to reinstate McClee.